**Stephen Piucci, OSB # 821056**
steve@piucci.com
**Joe Piucci, OSB # 135325**
joe@piucci.com
PIUCCI LAW, LLC
900 SW 13th, Suite 200
Portland, OR 97205-1707
Tel: (503) 228-7385
*Lead / Local Counsel for Plaintiff*

**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
CASEY LAW FIRM, LLC
PO Box 4577
Frisco, CO 80443-4577
Tel: (970) 372-6509
*Counsel for Plaintiff*

**Gillian L. Wade (*to apply PHV*)**
gwade@mjfwlaw.com
**Sara D. Avila (*to apply PHV*)**
savila@mjfwlaw.com
**Marc A. Castaneda (*to apply PHV*)**
mcastaneda@mjfwlaw.com
MILSTEIN JACKSON
FAIRCHILD & WADE, LLP
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067-6212
Tel: (310) 396-9600
*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SARAH VITORT, a consumer residing in Oregon, individually and on behalf of all others situated, | Case No. |
| Plaintiff, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | |
| THE KROGER COMPANY, an Ohio corporation, FRED MEYER STORES, INC., an Ohio corporation, and DOES 1 through 100, inclusive, | Unlawful Trade Practices (28 U.S.C. § 1332) |
| | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff SARAH VITORT ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on her personal knowledge, and otherwise, upon information and belief:

**NATURE OF THE ACTION**

1.      This consumer class action addresses a troubling trend – the harmful means used by some companies to exploit the ever-growing consumer demand for minimally processed foods that avoid unhealthy added sugars.

2.      Defendants The Kroger Company, Fred Meyer Stores, Inc., and Does 1-100 (collectively, "Defendants") label, market, and/or sell a Kroger-branded food item named "Just Fruit" (hereafter, the "Product), which the front label further describes as "spreadable fruit." The following illustrates the blackberry Product label:



3.      Through its labeling, on the front of every jar, Defendants uniformly represent that the Product contains only the fruit identified (in this example, blackberries). However, the

ingredients list on the back label reveals that the Product is made primarily with "fruit syrup," and contains other sweeteners, added sugars, and additives such as "pectin," "calcium citrate," "apple juice concentrate," and "citric acid." Fruit syrup, not blackberries, is the first listed ingredient.

4.      Reasonable consumers, like Plaintiff, have suffered an ascertainable loss of money, measured by the difference between the price paid for a product made of "Just Fruit" and the lower market value of a product that is made primarily of sugary fruit syrup. As a result of Defendant's illegal conduct, the purchase price of the Product was greater than its objective market value.

5.      Accordingly, Plaintiff brings this action both on her own behalf and on behalf of the Class defined below, comprised of all individuals similarly situated within the State of Oregon, to redress the unlawful and deceptive practices employed by Defendants in connection with its labeling, marketing and sale of the Product.

6.      Plaintiff seeks redress for Defendants' reckless, knowing, and/or willful violations of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.* (herein referred to as "UTPA") and Breach of the Implied Warranty of Merchantability.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1332(d), because there is diversity of citizenship between members of the proposed Class and Defendants. Defendants are either incorporated and/or have their principal place of business outside the state in which Plaintiff and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

8.    This Court has personal jurisdiction over Defendants because Defendants are foreign corporations authorized to do business in Oregon and registered with the Oregon Secretary of State, and have sufficient minimum contacts with Oregon or otherwise intentionally avail themselves of the laws and markets of Oregon, through the promotion, sale, marketing and distribution of the Product in Oregon, to render the exercise of jurisdiction by the Oregon courts permissible.

9.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because Defendants are subject to personal jurisdiction in this district

## THE PARTIES

10.    Plaintiff SARAH VITORT is an individual, a resident of Multnomah County, and a member of the Class alleged herein.

11.    Defendant THE KROGER COMPANY is an Ohio corporation with its principle place of business in Cincinnati, Ohio. THE KROGER COMPANY is the owner and/or operator of various grocery stores, and is the parent company of Defendant Fred Meyer Stores, Inc.

12.    Defendant FRED MEYER STORES, INC. is an Ohio corporation with its principle place of business in Cincinnati, Ohio. FRED MEYER STORES, INC. is the owner and/or operator of the Fred Meyer grocery store(s) where Plaintiff purchased the Product in Portland, Oregon.

13.    Upon best information and belief, Defendants DOES 1 through 1000 are subsidiaries, partners, or other entities that were involved in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product.

The true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

14.     Defendants engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product, and are responsible for the illegal label representations and/or conduct likely to cause confusion complained of herein.

15.     Defendants transacted and conducted business within the State of Oregon that relates to the allegations in this Complaint.

16.     Defendants derived substantial revenue from goods and products bought and used in the State of Oregon.

17.     Defendants purposefully availed themselves of the privilege of conducting activities within the State of Oregon, thus invoking the benefits and protections of its laws.

18.     Defendants advertise and sell goods, specifically the Product, in Multnomah County, Oregon.

**<u>FACTUAL ALLEGATIONS</u>**

19.     There is unquestionably a growing demand for minimally processed, additive-free foods in the United States.

20.     This is especially true with respect to added sugars, which have been rightfully vilified in recent decades for their significant role in heart disease, diabetes, and weight gain.

21.     Indeed, a diet heavy in added sugar is linked to a risk of dying from heart disease even if one is not overweight. As the *Harvard Health Letter* explains:

We all know that too much sugar is bad for health, but even the detectives among us may not realize how often sugar shows up on the dining table. "It's the added sugar that's problematic. Not the natural sugar in fruit, which has fiber to slow absorption, but added sugar—such as honey, molasses, and corn syrup," says Debbie Krivitsky, a registered dietitian at Harvard-affiliated Massachusetts General Hospital.

…

Why does added sugar cause so much trouble? It's digested immediately and rapidly absorbed, and this causes an upswing in your blood sugar levels. "That challenges your pancreas to pump out more insulin. If the pancreas can't keep up with that demand, blood sugar levels rise, which can lead to more problems with insulin secretion, and ultimately to diabetes," says Dr. David M. Nathan, a Harvard Medical School professor and the director of the Diabetes Center and Clinical Research Center at Massachusetts General Hospital.

Harvard Health Letter, *How to spot – and avoid – added sugar*, https://www.health.harvard.edu/staying-healthy/how-to-spot-and-avoid-added-sugar (Oct. 2014).

22.    This growing understanding has certainly affected consumer behavior, with some studies indicating that over 80 percent of consumers seek to limit or avoid sugar in their diet. Most consumers prefer to cut sugar intake than switch to artificial sweeteners, seeking products with 'reduced sugar' or 'no added sugar.'

23.    Manufacturers and retailers such as Defendants, in turn, are able to charge more for products meeting this consumer demand.

24.    Seeking to capitalize on this market, Defendants created, marketed, labeled, advertised distributed, and sold Kroger "Just Fruit", a purported "spreadable fruit" product.

25.    The following front label for the blackberry flavor is illustrative:



26.     Through this labeling, which (upon information and belief) was substantively identical throughout the Class Period, Defendants advertised and marketed the Product as comprising 'just fruit'; namely, the fruit flavor identified on the front label.

27.     The front label further describes the product as "spreadable fruit", further reinforcing the message that the Product was just that.

28.     Despite labeling and advertising the Product as being "Just Fruit", the Product actually contains large amounts of added sugars, and additives such as "pectin," "calcium citrate," "apple juice concentrate," and "citric acid."

29.     Further, as the ingredients list (featured below) demonstrates, the number one ingredient in the Product is actually fruit syrup, and most of the Product's sugar content derives from "Added Sugars."



30.     Thus, Defendants' 'just fruit' claim—indeed the very name of the Product itself—is demonstrably false.

31.     In or around late 2019-early 2020, and again in or around March 2020, Plaintiff purchased the Product from a Fred Meyer grocery store in the Portland, Oregon municipal area. As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact in the form of an ascertainable loss of money as a result of Defendants' actions as set forth herein.

32.     As described below, though purchasing a product described as 'just fruit', Plaintiff actually received an inferior product made primarily of fruit syrup, contained multiple other additives, and derived much of its sweetness from harmful added sugars. Like other Class Members, what Plaintiff received is inherently worth less than the Product as represented.

## **CLASS ACTION ALLEGATIONS**

33.    Plaintiff brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the State of Oregon who purchased Just Fruit since August 6, 2016 for personal use and not for resale.**

34.    Specifically excluded from the proposed Class are Defendants, their officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

successors, assigns, or other persons or entities related to or affiliated with Defendants and/or

their officers and/or directors, or any of them. Also excluded from the proposed Class are the

Court, the Court's immediate family and Court staff.

35.    Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or

amended complaint.

### Federal Rules of Civil Procedure, Rule 23(a) Factors

36.    **Numerosity**. Membership in the Class is so numerous that separate joinder of

each member is impracticable. The precise number of Class Members is unknown at this time

but can be readily determined from Defendants' records. Plaintiff reasonably estimates that there

are at least thousands of persons in the Class.

37.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and

protect the interests of the members of the Class. Plaintiff has retained counsel highly

experienced in complex consumer class action litigation and intends to prosecute this action

vigorously. Plaintiff is a member of the Class described herein and does not have interests

antagonistic to, or in conflict with, the other members of the Class.

38.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendants' Just Fruit product with the label claims complained of herein, and—as a result of Defendants' illegal conduct—have suffered an ascertainable loss of money, measured by the difference between the price paid for a product made of "Just Fruit" and the lower market value of a product that is made primarily of sugary fruit syrup.

39.    **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

a)    Whether Defendants represent the Product as comprised of 'just fruit';

b)     Whether the Product consists of or is derived from 'just fruit';

c)    Whether the Product as represented by the Defendants is inherently worth more than the Product actually received by Class Members;

d)    Whether Defendants violated Or. Rev. Stat. §§ 646.608(1)(b), 646.608(1)(e), 646.608(1)(g), 646.608(1)(i) and/or 646.608(1)(t);

e)    Whether Defendants' violations of UTPA were willful, reckless, and/or knowing;

f)    Whether Plaintiff and the Class are entitled to statutory damages of $200 under UTPA;

g)    Whether Defendant's conduct, as alleged herein, constitutes a breach of the implied warranty of merchantability;

h)    Whether Plaintiff and the Class are entitled to attorneys' fees and costs, and in what amount; and

CLASS ACTION COMPLAINT – Page 10 of 32

i)   Whether Plaintiff and the Class are entitled to declaratory and/or other equitable relief.

<u>Federal Rules of Civil Procedure, Rule 23(b)(3) Factors</u>

40.    **Common Issues Predominate**: As set forth in detail hereinabove, common issues of fact and law predominate because Plaintiff's claims are based on Defendants' common course of conduct. Whether Defendants' conduct violates Oregon's Unlawful Trade Practices Act, <u>Or. Rev. Stat.</u> §§ 646.605, *et seq.* and constitutes a breach of warranty is common to all members of the Class and are the predominating issues, and Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a)   Given the size of the claims of individual Class Members, as well as the resources of Defendants, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b)   This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort, and expense ad will ensure uniformity of decisions;

c)   Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d)   Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendants will

continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

42.    **Notice to the Class:** Notice can be accomplished by publication for most Class Members. Upon information and belief, some Class Members may be identified through Defendants' own records, since Defendants and their affiliates are also the primary retailer of the Product and utilize membership rewards programs that track purchases for marketing purposes.

43.    The Class Members have suffered economic harm and suffered injury in fact as a result of Defendants' misconduct, in that each member purchased the Product whose value was diminished due to Defendants' unlawful conduct.

## CLAIMS FOR RELIEF

44.    Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
Or. Rev. Stat. §§ 646.605, *et seq.*
Subsection 646.608(1)(b): causing likelihood of confusion or misunderstanding

45.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

46.    Plaintiff brings this claim under UTPA, Or. Rev. Stat. §§ 646.605, *et seq.*, on behalf of herself and the Class, who were subject to Defendant's above-described illegal conduct.

47.    Plaintiff and Defendants are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

48.    Defendants are engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

49.    Defendants are engaged in "trade" or "commerce" within the meaning of O.R.S.. § 646.605(8), affecting consumers in Oregon and throughout the United States.

50.    Defendants engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product.

51.    UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendants willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under the UTPA.

52.    Defendants violated O.R.S. § 646.608(1)(b) by causing the likelihood of confusion or of misunderstanding as to the source of goods. Defendants' Product name and labeling causes the likelihood that reasonable consumers to confuse or misunderstand the source of the Product as being "Just Fruit" (namely, the fruit pictured on the front label) when in fact, the Product is primarily sourced from sugary fruit syrup and contains significant added sugars.

53.    A product containing just fruit (which is likely to be misunderstood by reasonable consumers as applying to this Product), is inherently worth more than the actual Product purchased by Plaintiff and the Class, which is a product consisting primarily of fruit syrup and added sugars.

54.    Defendants' violations of O.R.S. § 646.608(1)(b) were willful as Defendants knew or should have known that the conduct complained of herein caused the likelihood of

confusion or of misunderstanding as to the source of the Product, and violated Oregon's Unlawful Trade Practices Act.

55.    Defendants caused the likelihood of confusion complained of herein with the knowledge that their conduct was illegal at the time the Product label was created through the present. As the Product (back label) ingredients list discloses, the Product contains far more than 'just fruit.'

56.    Further, Defendants recklessly and/or knowingly engaged in conduct which caused the likelihood of confusion or of misunderstanding as to the source of the Product.

57.    Defendants willfully and knowingly (and/or recklessly) named the Product "Just Fruit", which Defendants knows causes the likelihood of confusion and/or misunderstanding that the Product contains 'just fruit,' which Defendants at all relevant times knew and know is not the case.

58.    It is axiomatic that Defendants knew that by naming the Product "Just Fruit", that there was a likelihood that reasonable consumers would confuse or misunderstand that the source of the Product was namely that: just fruit, and that the Product would be free of added sugars.

59.    Defendants intended to cause confusion as to the source of the Product being 'just fruit,' as Defendants (upon reasonable belief) were aware (or should have been aware) of the market for lesser processed, more natural products without added sugars, and knew they could charge more for such a Product than one consisting primarily of sugary fruit syrup.

60.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every jar of the Product manufactured, labeled, and sold by Defendants to Plaintiff and the Class, which caused likelihood of confusion or of misunderstanding as to the source of the Product.

61.    Upon reasonable belief, Defendants continued to manufacture, market, and/or sell the Product as 'Just Fruit' even after receiving Plaintiff's April 2020 notice letter, which cited conduct violating, *inter alia*, the UTPA.

62.    Even after receiving this notice letter, Defendants made no effort to refund either Plaintiff or the Class in response.

63.    Further, upon reasonable belief, Defendants were aware or should have been aware of a number of lawsuits regarding other 'jam-like' products targeting claims similar to 'just fruit', such as 'simply fruit,' many of which were resolved in the plaintiffs' favor. Defendants' retail operations sell some of these very products.

64.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

65.    Plaintiff and the Class lost money due to the difference between the value of the Product as marketed by the Defendant in a way that is likely to cause confusion or of misunderstanding, as inherently reflected in the purchase price, and the lesser value of the Product actually received by the Plaintiff and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), Plaintiff and the Class would not have suffered this ascertainable loss of money.

66.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of herself and the Class) seeks statutory damages in the amount of $200.

67.    Plaintiff and the Class further seek an order declaring Defendants have violated UTPA.

68.     Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

69.     Injunctive relief is proper, as Plaintiff would purchase the Product again, but only if Defendants sold the Product with the 'just fruit' ingredient, without added sugars.

### SECOND CAUSE OF ACTION

**VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605, *et seq*.**
**Subsections 646.608(1)(e) and (1)(g): unlawful representations**

70.     Plaintiff here incorporates by reference all preceding as though fully set forth herein.

71.     Defendants violated O.R.S. § 646.608(1)(e) by representing that goods have characteristics, ingredients, quantities or qualities that the goods do not have. Similarly, Defendants violated O.R.S. § 646.608(1)(g) by representing that goods are of a particular standard, quality or grade when they are of another. Defendants' Product name and labeling represents that the Product contains and/or has the quality of being "Just Fruit" (namely, the fruit pictured on the front label) when in fact, the Product is primarily sourced from sugary fruit syrup and contains significant added sugars.

72.     A product containing or having the quality of being 'just fruit' (namely, the fruit pictured on the label)—which is how the product is represented to all consumers—is inherently worth more than the actual Product purchased by Plaintiff and the Class, which is a product consisting primarily of fruit syrup and added sugars.

73.     Defendants' violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g) were willful as Defendants knew or should have known that the conduct complained of herein caused the Product to be misrepresented, and violated Oregon's Unlawful Trade Practices Act.

74.     Defendants engaged in the misrepresentations complained of herein with the knowledge that their conduct was illegal at the time the Product label was created through the present. As the Product (back label) ingredients list discloses, the Product contains far more than 'just fruit.'

75.     Further, Defendants recklessly and/or knowingly misrepresented the Product as containing or having the quality of being 'just fruit.'

76.     Defendants willfully and knowingly (and/or recklessly) named the Product "Just Fruit", which Defendants knows misrepresents that the Product contains or has the quality of being 'just fruit,' which Defendants at all relevant times knew and knows is not the case.

77.     It is axiomatic that Defendants knew that by naming the Product "Just Fruit" that they were misrepresenting the Product as 'just fruit,' since Defendants were aware that the Product was primarily sourced from sugary fruit syrup and contained added sugars. As a retailer, Defendants presumably are aware of other 'jam-like' products they sell that disclose on the front label the addition of added sugars or sweetener agents.

78.     Defendants intended to misrepresent the Product being 'just fruit,' as Defendants (upon reasonable belief) were aware (or should have been aware) of the market for lesser processed, more natural products without added sugars, and knew they could charge more for such a Product (as misrepresented) than one consisting primarily of sugary fruit syrup.

79.     The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every jar of the Product manufactured, labeled, and sold by Defendants to Plaintiff and the Class, which misrepresented the Product as containing or having the quality of being 'just fruit.'

80.    Upon reasonable belief, Defendants continued to manufacture, market, and/or sell the Product as 'Just Fruit' even after receiving Plaintiff's April 2020 notice letter, which cited conduct violating, *inter alia*, the UTPA.

81.    Even after receiving this notice letter, Defendants made no effort to refund either Plaintiff or the Class in response.

82.    Further, upon reasonable belief, Defendants were aware or should have been aware of a number of lawsuits regarding other 'jam-like' products targeting claims similar to 'just fruit', such as 'simply fruit,' many of which were resolved in the plaintiffs' favor. Defendants' retail operations sell some of these very products.

83.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

84.    Plaintiff and the Class lost money due to the difference between the value of the Product as misrepresented by the Defendant, as inherently reflected in the purchase price, and the lesser value of the Product actually received by the Plaintiff and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), Plaintiff and the Class would not have suffered this ascertainable loss of money.

85.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of herself and the Class) seeks statutory damages in the amount of $200.

86.    Plaintiff and the Class further seek an order declaring Defendants have violated UTPA.

87.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

88.     Injunctive relief is proper, as Plaintiff would purchase the Product again, but only if Defendants sold the Product with the 'just fruit' ingredient, without added sugars.

### THIRD CAUSE OF ACTION

**VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605, *et seq.***
**Subsections 646.608(1)(e) and (1)(g): failure to disclose lawfully required information**

89.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

90.     Defendants violated O.R.S. §§ 646.608(1)(e) and 646.608(1)(g)—which deal specifically with 'representations'—by failing to disclose lawfully required information and/or failing to disclose information in the particular way the law requires. As noted in O.R.S. § 646.608.2 (emphasis added), "[a] *representation* under subsection (1) of this section or ORS 646.607 may [include], but not limited to, a *failure to disclose a fact*."

91.     The legally required yet omitted information—as described below—relates to the characteristics, ingredients, quantities or qualities of the good (§ 646.608(1)(e)); and/or the particular standard, quality, or grade of a the good (646.608(1)(g)).

92.     Here, as provided below, Defendants fail to disclose information and/or failed to disclose information in a particular way that was required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FFDC").

93.     "Added Sugars" are considered a "nutrient" as used the FFDC's implementing regulations. *See* 21 C.F.R. § 101.9(c)(6)(iii).

94.     By describing the Product as "Just Fruit," Defendants are "[d]escrib[ing] the food or an ingredient therein in a manner that suggests that [Added Sugars are] absent", rendering

"Just Fruit" an "implied nutrient content claim" under 21 C.F.R. § 101.13(b)(2) (hereafter, "INCC").

95.   Alternatively, "Just Fruit" is a  "[c]laim about the food or an ingredient therein that suggest that…an ingredient [here, fruit and/or the fruit pictured on the label] is…present in a certain amount", rendering "Just Fruit" an INCC per 21 C.F.R. § 101.65(c)(1).

96.   Pursuant to 21 C.F.R. §§ 101.65(a)(2)-(3), when an INCC is made on a label, it must be made in accordance with, *inter alia*, 21 C.F.R. §§ 101.13 and 101.9.

97.   When an INCC claim is made, Section 101.13 requires a "statement of identity" disclosure. 21 CFR § 101.13(f). Under 21 CFR § 101.3(b), "[s]uch statement of identity shall be in terms of: (1) [t]he name now or hereafter specified in or required by any applicable Federal law or regulation; or, in the absence thereof, (2) [t]he common or usual name of the food; or, in the absence thereof, (3) [a]n appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food."

98.   Here, the name of the fruit or "spreadable fruit" is not the common or usual name of a fruit product that is anything but rather a 'jam-like' product that is derived primarily from sugar fruit syrup and contains significant added sugars. Nor are the fruit's name or "spreadable fruit" an "appropriately descriptive term[.]"

99.   Here, Defendants were legally required to disclose—and yet failed to disclose—the statement of identity.

100.   Alternatively, even if "spreadable fruit" (or alternatively, the name of the fruit) is a satisfactory "statement of identity" (it is not), Section 113 requires that it be disclosed in type no smaller than one-half the INCC and in a way that the INCC is not unduly prominent when compares to the statement of identity. 21 C.F.R. § 101.13(f).

101.    The "spreadable fruit" claim on the front label fails both of these disclosure requirements. Thus, even if the statement of identity was disclosed (and again, it was not), it was not disclosed in the particular way the law requires.

102.    Alternatively, Defendants failed to disclose information as required by Section 101.9. Therein, when an INCC claim "is made on the label of a product that uses a dual column as required in paragraph (b)(2)(i)(D) or (b)(12)(i) of this section, the claim must be followed by a statement that sets forth the basis on which the claim is made[.]" 21 CFR § 101.9(b)(12)(ii). Here, Defendants omit any statement setting forth the basis on which the INCC is made.

103.    Alternatively, even if Defendants did not make an INCC, the Product is an "imitation of another food" (here, the particular fruit pictured on the label) because "it is a substitute for and resembles another food but is nutritionally inferior to that food." 21 C.F.R. 101.3(e).

104.    Insofar as the Product is an "imitation", Defendants were legally required to provide—but omitted—the word "imitation" from the front label. 21 C.F.R. § 101.3(e).

105.    Defendants thus failed to disclose legally required information which related directly to the characteristics, ingredients, quantities or qualities of the Product; and/or the particular standard, quality, or grade of the Product.

106.    In failing to provide the legally mandated disclosures, Defendants illegally sold the Product to Plaintiff and the Class, thereby causing Plaintiff and the Class Members' ascertainable loss of money.

107.    Alternatively, the Product having the characteristics, ingredients, quantities, qualities, and/or standard of being a 'spreadable fruit consisting of 'just fruit'—which is how the

product is represented to all consumers—is inherently worth more than a product conforming to the legally required disclosures, which is what consumers actually received.

108.    Defendants' violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g) were willful as Defendants knew or should have known that it was omitting legally required information relating to the characteristics, ingredients, quantities, qualities, and/or standard of the Product, causing the Product to be misrepresented on account of omissions, and violated Oregon's Unlawful Trade Practices Act.

109.    Defendants engaged in the omissions complained of herein with the knowledge that their conduct was illegal at the time the Product label was created through the present. As described above, the Product required a number of disclosures under federal law, which the Defendants failed to provide.

110.    Further, Defendants recklessly and/or knowingly omitted the legally required information (described above) relating to the characteristics, ingredients, quantities, qualities, and/or standard of the Product.

111.    Defendants are sophisticated grocer entities who manufacture and sell a number of products, and can be presumed to have an understanding of federal food labeling requirements.

112.    Defendants intended to omitted the legally required information discussed herein, as Defendants (upon reasonable belief) were aware (or should have been aware) of the market for non-imitation, more natural products without added sugars, and knew they could charge more for such a Product without the legally required disclosures than one containing the legally required disclosures.

113.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every jar of the Product manufactured, labeled, and sold by Defendants to Plaintiff and the Class, which omitted the legally required information discussed herein.

114.    Upon reasonable belief, Defendants continued to manufacture, market, and/or sell the Product without the legally required disclosures, even after receiving Plaintiff's April 2020 notice letter, which cited conduct violating, *inter alia*, the UTPA.

115.    Even after receiving this notice letter, Defendants made no effort to refund either Plaintiff or the Class in response.

116.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), described above, Plaintiff and the Class suffered an ascertainable loss of money or property. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), Plaintiff and the Class would not have suffered this ascertainable loss of money.

117.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of herself and the Class) seeks statutory damages in the amount of $200.

118.    Plaintiff and the Class further seek an order declaring Defendants have violated UTPA.

119.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

120.    Injunctive relief is proper, as Plaintiff would purchase the Product again, but only if Defendants sold the Product with the 'just fruit' ingredient, without added sugars.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT
### Or. Rev. Stat. §§ 646.605, *et seq*.
### Subsection 646.608(1)(i): false advertising

121.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

122.    Defendants violated O.R.S. § 646.608(1)(i) by advertising goods with intent not to provide them as advertised. Through their labeling, Defendants advertised the Product as "Just Fruit" which is simply "spreadable fruit" (namely, the specific fruit identified on the front label). However, as discussed here, this was *not* the product provided to Plaintiff and the Class. Rather, a product consisting primarily of sugary fruit syrup and containing significant added sugars was provided to Plaintiff and the Class.

123.    A product containing just fruit is inherently worth more than the actual Product purchased by Plaintiff and the Class, which is a product consisting primarily of fruit syrup and added sugars.

124.    Defendants' violations of O.R.S. § 646.608(1)(i) were willful as Defendants knew or should have known that the conduct complained of herein (the labeling) was an advertisement that did not conform to the true nature of the Product, and violated Oregon's Unlawful Trade Practices Act.

125.    Defendants engaged in the false advertising complained of herein with the knowledge that their conduct was illegal at the time the Product label was created through the present.

126.    Further, Defendants recklessly and/or knowingly engaged in in the false advertising conduct.

127.    Defendants willfully and knowingly (and/or recklessly) advertised the Product as "Just Fruit", which Defendants knew was false, and at no point did Defendants seek to provide a 'just fruit' product in place of the actual Product advertised to Plaintiff and the Class.

128.    It is axiomatic that Defendants knew that by advertising the Product "Just Fruit", that reasonable consumers would believe the Product provided would be namely that: just fruit, and that the Product would be free of added sugars.

129.    Defendants intended to engage in this false advertising without providing the Product as advertised, as Defendants (upon reasonable belief) were aware (or should have been aware) of the market for lesser processed, more natural products without added sugars, and knew they could charge more for such the Product as falsely advertised than one without the false advertisements.

130.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, the false advertising occurred over years with respect to every jar of the Product manufactured, labeled, and sold by Defendants to Plaintiff and the Class.

131.    Upon reasonable belief, Defendants continued advertise the Product as 'Just Fruit' and a "spreadable fruit" product, even after receiving Plaintiff's April 2020 notice letter, which cited conduct violating, *inter alia*, the UTPA.

132.    Even after receiving this notice letter, Defendants made no effort to refund either Plaintiff or the Class in response.

133.    Further, upon reasonable belief, Defendants were aware or should have been aware of a number of lawsuits regarding other 'jam-like' products targeting claims similar to 'just fruit', such as 'simply fruit,' many of which were resolved in the plaintiffs' favor. Defendants' retail operations sell some of these very products.

134.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

135.    Plaintiff and the Class lost money due to the difference between the value of the Product as illegally advertised by the Defendant, as inherently reflected in the purchase price, and the lesser value of the Product actually received by the Plaintiff and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), Plaintiff and the Class would not have suffered this ascertainable loss of money.

136.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of herself and the Class) seeks statutory damages in the amount of $200.

137.    Plaintiff and the Class further seek an order declaring Defendants have violated UTPA.

138.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

139.    Injunctive relief is proper, as Plaintiff would purchase the Product again, but only if Defendants sold the Product as it was advertised to Plaintiff and the Class (i.e., one containing 'just fruit', without added sugars).

## <u>FIFTH CAUSE OF ACTION</u>

**VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605,** *et seq.*
**Subsection 646.608(1)(t): failure to disclose material defect and/or nonconformity**

140.    Plaintiff hereby incorporates by reference all preceding as though fully set forth herein.

141.    Defendants violated O.R.S. § 646.608(1)(t) by, concurrent with tender or delivery of goods, failing to disclose any known material defect or material nonconformity.

142.    Here, Defendants 'tendered' and/or 'delivered' the good to Plaintiff and the Class, as Defendants and their subsidiaries comprise own, control, and/or operate the retail establishments where Plaintiff and the Class purchased the Product. Thus, Defendants directly sold the Product to Plaintiff and the Class.

143.    Here, Defendants failed to disclose known material defects and/or a material nonconformity.

144.    Plaintiff and the Class purchased a product that was purportedly 'just fruit', but received a product that was significantly more than 'just fruit'; namely, one that was primarily sourced from harmful added sugars and fruit syrup. This defect and nonconformity is on its face material, as it goes to the very nature—indeed, the name—of the Product: "Just Fruit."

145.    Alternatively, Defendants failed to disclose the information required by the FFDC on the Product's label. Defendants' violations of federal labeling laws renders the product as failing to conform with established norms. Further, the legally required yet omitted information is inherently material to a reasonable consumer.

146.    A product containing 'Just Fruit' is inherently worth more than a Product that fails to meet that definition due to its primary sourcing from sugary fruit syrup. Alternatively, a product which actually contains the INCC described above—which was how the Product was represented to Plaintiff and the Class—is inherently worth more than a fruit-syrup based product without the INCC relating to added sugars.

147.    Defendants' violations of O.R.S. § 646.608(1)(t) were willful as Defendants knew or should have known of the material defects and/or nonconformities complained of herein, that they were failing to disclose same, and were violating Oregon's Unlawful Trade Practices Act.

148.    Defendants were well aware that the Product was not 'just fruit', that it was primarily sourced from sugary fruit syrup, and that it failed to conform to federal labeling requirements. Defendants were further aware that these material defects and/or nonconformities were inherently material.

149.    Further, Defendants recklessly and/or knowingly engaged in this conduct violating § 646.608(1)(t). Defendants knew of the material defects and/or nonconformities, knew that it could charge more for the Product if it failed to disclose them, and intentionally did just that.

150.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every jar of the Product manufactured, labeled, sold (and/or concurrently delivered without the disclosures) by Defendants to Plaintiff and the Class.

151.    Upon reasonable belief, Defendants continued to manufacture, market, sell and/or concurrently deliver the Product without disclosing the material defects and/or material nonconformities complained of herein.

152.    Even after receiving this notice letter, Defendants made no effort to refund either Plaintiff or the Class in response.

153.    Further, upon reasonable belief, Defendants were aware or should have been aware of a number of lawsuits regarding other 'jam-like' products targeting claims similar to

'just fruit', such as 'simply fruit,' many of which were resolved in the plaintiffs' favor. Defendants' retail operations sell some of these very products.

154.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(t), described above, Plaintiff and the Class suffered an ascertainable loss of money or property.

155.    Plaintiff and the Class lost money due to the difference between the value of the Product as represented by the Defendant, as inherently reflected in the purchase price, and the lesser value of the Product actually received by the Plaintiff and the Class—which contained the material defects and/or material nonconformities discussed herein. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(t), Plaintiff and the Class would not have suffered this ascertainable loss of money.

156.    Pursuant to O.R.S. § 646.638(1), Plaintiff (on behalf of herself and the Class) seeks statutory damages in the amount of $200.

157.    Plaintiff and the Class further seek an order declaring Defendants have violated UTPA.

158.    Plaintiff and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

159.    Injunctive relief is proper, as Plaintiff would purchase the Product again, but only if Defendants sold the Product with the 'just fruit' ingredient, without added sugars, rather than the product currently sold with its material defects and/or material nonconformities.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Or. Rev. Stat. §§ 646.605, *et seq*.

160.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

161.    Plaintiff brings this claim under the implied warranty of merchantability, Or. Rev. Stat. § 72.3140, on behalf of himself and the National Class.

162.    Defendants were at all relevant times "merchants" with respect to its sale of Roundup, under Or. Rev. Stat. §§ 72.1040(1), and a "seller" of Just Fruit under § 72.1030(1)(d).

163.    Just Fruit was and is at all relevant time a "good" within the meaning of Or. Rev. Stat. §§ 72.1050(1).

164.    Plaintiff and members of the Class purchased Just Fruit from Defendants by and through Defendants' authorized agents for retail sales.

165.    A warranty that Just Fruit was in merchantable condition and fit for the ordinary purpose for which it is used is implied by law pursuant to Or. Rev. Stat. § 72.3140.

166.    Just Fruit, when sold to Plaintiff and the Class, was not in merchantable condition and/or fit for its ordinary purposes because it did not "[c]onform to the promises or affirmations of fact made on the container or label." Or. Rev. Stat. § 72.3140(2)(f). Despite its name and the other representations on its labeling, Just Fruit is not comprised of "just fruit" (i.e., the fruit identified on the front label). Instead, Just Fruit contains additional ingredients, such as fruit syrup (and other sweeteners and added sugars) and other additives such as pectin, calcium citrate, apple juice concentrate, and/or citric acid. Thus, Defendants breached their implied warranty of merchantability.

167.    Alternatively, Defendants breached the implied warranty of merchantability by failing to provide a product labeled in accordance with federal labeling laws, as discussed in detail above.

168.    Plaintiff and members of the Class have had sufficient direct dealings with Defendants, or their authorized agents for retail sales, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Class, on the other hand.

169.    Defendants were provided pre-suit notice of their breach of the implied warranty of merchantability, in a letter dated April 20, 2020. Despite this notice, Defendants (upon information and belief) failed to cure their breach of the implied warranty of merchantability and continue to mislabel their products.

170.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel as counsel for the Class;

B.    To pay actual and/or statutory damages of $200 to Plaintiff and all members of the Class;

C.    Pre-judgment interest from the date of filing this suit;

D.    Declaring that Defendants have committed the violations alleged herein.

E.      Reasonable attorneys' fees;

F.      Costs of this suit; and

G.      Such other and further relief as the Court may deem necessary or appropriate.

**JURY DEMAND AND NOTICE TO ATTORNEY GENERAL**

Plaintiff and the Class, by and through undersigned counsel, hereby request a trial by jury

as to all issues so triable. Further, upon filing this action, this Complaint shall be mailed to the

Attorney General of the State of Oregon, and proof of receipt of same shall be filed with this

Court.

August 6, 2020                          Respectfully submitted,

                                        **PIUCCI LAW, LLC**

                           By: _____
                                        Joe Piucci (OSB # 135325)
                                        joe@piucci.com
                                        Stephen Piucci (OSB # 821056)
                                        steve@piucci.com
                                        900 SW 13th, Suite 200
                                        Portland, OR 97205-1707
                                        Tel: (503) 228-7385
                                        Fax: (503) 228-2571

                                        *and*

                                        **MILSTEIN JACKSON FAIRCHILD
                                        & WADE, LLP**
                                        Gillian L. Wade (*to apply PHV*)
                                        gwade@mjfwlaw.com
                                        Sara D. Avila (*to apply PHV*)
                                        savila@mjfwlaw.com
                                        Marc A. Castaneda (*to apply PHV*)
                                        mcastaneda@mjfwlaw.com
                                        10250 Constellation Blvd., Suite 1400
                                        Los Angeles, CA 90067
                                        Tel: (310) 396-9600
                                        Fax: (310) 396-9635

                                        *and*

**CASEY LAW FIRM, LLC**
M. Ryan Casey (OSB # 152824)
ryan@rcaseylaw.com
PO Box 4577
Frisco, CO 80443
Tel: (970) 372-6509
Fax: (970) 372-6482

*Counsel for Plaintiff*