**KEVIN H. KONO**, OSB #023528
kevinkono@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, OR 97201-5610
Telephone:  (503) 241-2300

**JACOB M. HARPER**, *pro hac vice*
jharper@dwt.com
**JAMES H. MOON**, *pro hac vice*
jamesmoon@dwt.com
**ANDREW G. ROW**, *pro hac vice*
andrewrow@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone:  (213) 633-6800

*Attorneys for Defendants*
*The Kroger Company and*
*Fred Meyer Stores, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SARAH VITORT**, a consumer residing in Oregon, individually and on behalf of all others situated,<br><br>**PLAINTIFF**,<br><br>v.<br><br>**THE KROGER COMPANY**, an Ohio corporation; **FRED MEYER STORES, INC.**, an Ohio corporation; and DOES 1 through 100, inclusive,<br><br>**DEFENDANTS.** | Case No. 3:20-cv-01317-AC<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION ALLEGATION COMPLAINT**<br><br>REQUEST FOR ORAL ARGUMENT |

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL ALLEGATIONS ...............................................................................4

III.    LEGAL STANDARD ..........................................................................................5

IV.     MS. VITORT'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ...................6

        A.      Ms. Vitort's Claims Each Fail Because Her Underlying Theory of
                Liability Is Implausible. ...........................................................................6

                1.      Ms. Vitort Must Allege a False or Misleading Representation
                        under a "Reasonable Consumer" Standard. ...................................6

                2.      Ms. Vitort Fails to Plausibly Allege that the Fruit Spread Is
                        Deceptive to Any Reasonable Consumer. ......................................8

                        a.      Ms. Vitort Fails to Allege That the Reference to the
                                Characterizing Flavor Is Deceptive. ................................ 9

                        b.      Ms. Vitort Fails to Allege the Fruit Spread Contains
                                Anything More Than "Just Fruit." ................................ 11

        B.      Federal Law Preempts Ms. Vitort's Claims.............................................14

                1.      Ms. Vitort Impermissibly Seeks to Impose Labeling Requirements
                        Not Identical to Federal Law. .....................................................15

                2.      Ms. Vitort Impermissibly Seeks to Enforce Alleged Violations of
                        Federal Law Through the UTPA. ................................................18

        C.      Ms. Vitort's UTPA Claims Fail for Additional Reasons. .......................20

                1.      Ms. Vitort Fails to Allege an Ascertainable Loss Caused by an
                        Alleged Violation. ......................................................................20

                2.      Ms. Vitort Fails to Allege Violation of UTPA Subsection (i). .................22

        D.      Ms. Vitort's Claims Also Fail to Adequately Plead Basic Factual Details. ..........23

                1.      Ms. Vitort Fails to Satisfy Federal Rule of Civil Procedure 9(b). .............23

                2.      Ms. Vitort Improperly Relies on Group Pleading......................................25

V.      CONCLUSION....................................................................................................27

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegro Corp. v. Only New Age Music, Inc.*,
  2002 U.S. Dist. LEXIS 27449 (D. Or. Oct. 4, 2002) ........................................... 9, 20

*Andriesian v. Cosmetic Dermatology, Inc.*,
  2015 U.S. Dist. LEXIS 50502 (D. Or. Mar. 3, 2015) ........................................ 6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................... 5, 7, 12, 21

*Azoulai v. BMW of N. Am. LLC*,
  2017 U.S. Dist. LEXIS 57121 (N.D. Cal. Apr. 13, 2017) ...................................... 8

*Barnett v. Becerra*,
  2018 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 26, 2018) ..................................... 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ......................................................................... 19

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................... 24

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) .......................................................... 11

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 U.S. Dist. LEXIS 163337 (C.D. Cal. Sep. 20, 2017) .................................. 8, 12

*CTIA v. City of Berkeley, Cal.*,
  928 F.3d 832 (9th Cir. 2019) ................................................................ 15

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................. 7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................ 12

*Fagbohungbe v. Caltrans*,
  2014 U.S. Dist. LEXIS 22214 (N.D. Cal. Feb. 19, 2014) ..................................... 26

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Fauley v. Wash. Mut. Bank, FA*,
  2014 U.S. Dist. LEXIS 38460 (D. Or. Feb. 19, 2014).....................................................20, 22

*Feitler v. The Animation Celection, Inc.*,
  170 Or. App. 702, 13 P.3d 1044 (2000).................................................................................21

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ....................................................................................................7

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................................13

*Harney v. Associated Materials, Inc.*,
  2018 U.S. Dist. LEXIS 8124 (D. Or. Jan. 18, 2018) ...........................................................20

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ...................................................................................16

*Henry v. Gerber Prods. Co.*,
  2016 U.S. Dist. LEXIS 52638 (D. Or. Apr. 18, 2016) ................................................3, 18, 20

*Herndon v. Sci. Applications Int'l Corp.*,
  2006 U.S. Dist. LEXIS 79520 (S.D. Cal. Oct. 31, 2006) .....................................................25

*Horton v. Nelson*,
  252 Or. App. 611, 288 P.3d 967 (2012)................................................................................23

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011)............................................................................16, 17

*In re Hydroxycut Marketing and Sales Practices Litig.*,
  299 F.R.D. 648 (S.D. Cal. 2014) .....................................................................................25, 26

*In re Medtronic, Inc.*,
  623 F.3d 1200 (8th Cir. 2010) ..............................................................................................19

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2014 U.S. Dist. LEXIS 199368 (C.D. Cal. Oct. 20, 2014)...................................................25

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...............................................................................26

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) .................................................................................26

*Karkanen v. California*,
  2018 U.S. Dist. LEXIS 135536 (N.D. Cal. Aug. 10, 2018)..................................................26

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Kearney v. Equilon Enters., LLC*,
  65 F. Supp. 3d 1033 (D. Or. 2014) ........................................................................24

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..........................................................................3, 24

*Manchouck v. Mondeléz Int'l, Inc.*,
  2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sep. 26, 2013) ....................2, 7, 9, 10, 12, 13, 14

*McKie v. Sears Prot. Co.*,
  2011 U.S. Dist. LEXIS 47967 (D. Or. Feb. 22, 2011) ........................................24

*McKinniss v. Sunny Delight Bevs. Co.*,
  2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sep. 4, 2007) ...........................2, 10, 17

*Mendoza v. Lithia Motors, Inc.*,
  2017 U.S. Dist. LEXIS 4716 (D. Or. Jan. 11, 2017) ..........................................21

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ......................................................................10, 14

*Musgrave v. Taylor Farms Pac., Inc.*,
  2019 U.S. Dist. LEXIS 229391 (N.D. Cal. Feb. 20, 2019) .................................26

*Pearson v. Philip Morris, Inc.*,
  358 Or. 88, 361 P.3d 3 (2015) ......................................................................20, 22

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) .................................................................3, 18, 19

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ..............................................................16

*Ponvanit v. Superior Court*,
  2018 U.S. Dist. LEXIS 32880 (C.D. Cal. Jan. 31, 2018) ...................................25

*Ramirez v. Medtronic Inc.*,
  961 F. Supp. 2d 977 (D. Ariz. 2013) ..................................................................19

*Sanders v. Francis*,
  277 Or. 593, 561 P.2d 1003 (1977) ....................................................................21

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ..............................................................................25

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  2012 U.S. Dist. LEXIS 21446 (N.D. Cal. Feb. 21, 2012) ...................................14

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Silva v. Unique Bev. Co., LLC*,
   2017 U.S. Dist. LEXIS 179362 (D. Or. Oct. 30, 2017) .....................................6, 7, 8, 9, 11, 21

*Silva v. Unique Bev. Co., LLC*,
   2017 U.S. Dist. LEXIS 93625 (D. Or. June 15, 2017) ...............................................21, 22, 24

*Solak v. Hain Celestial Grp., Inc.*,
   2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018) .....................................................13

*Solano v. Kroger Co.*,
   2020 U.S. Dist. LEXIS 107447 (D. Or. June 12, 2020) .......................................................23

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ...................................................................................................6

*Tortilla Factory, LLC v. Health-Ade LLC*,
   2018 U.S. Dist. LEXIS 157538 (C.D. Cal. July 13, 2018) ...................................................26

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .................................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...............................................................................................23

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................................................18

*Vinci v. Hyundai Motor Am.*,
   2018 U.S. Dist. LEXIS 139979 (C.D. Cal. Apr. 10, 2018) ...................................................24

*Werbel v. Pepsico, Inc.*,
   2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 1, 2010).........................................................8

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................................7, 9, 10, 14

*Wood v. Nationstar Mortg., LLC*,
   2017 U.S. Dist. LEXIS 128782 (D. Or. Aug. 14, 2017).......................................................20

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........................................................................2, 10, 14

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Statutes**

21 U.S.C.
 § 331................................................................................................15
 § 332................................................................................................19
 § 333................................................................................................19
 § 334................................................................................................19
 § 337................................................................................................19
 § 343.............................................................................................3, 16
 § 372................................................................................................19
 § 393................................................................................................15

Cal. Bus. & Prof. Code
 § 17200..............................................................................................8

ORS
 72.7250...............................................................................................6
 646.605...............................................................................................5
 646.608........................................................................3, 5, 6, 20, 22, 23
 646.638.......................................................................................20, 22

**Rules**

Fed. R. Civ. P.
 8..............................................................................................12, 26
 9........................................................................................1, 3, 23, 24, 25
 12..................................................................................................1, 7

**Regulations**

21 C.F.R.
 § 10.25..............................................................................................19
 § 10.30..............................................................................................19
 § 100.1..............................................................................................16
 § 101.22................................................................................3, 12, 17, 18
 § 150.160............................................................................................12
 § 184.1033..........................................................................................11
 § 184.1195..........................................................................................12
 § 184.1588..........................................................................................12

**Constitutional Provisions**

United States Constitution
 Article VI, cl. 2 ...................................................................................15

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## LR 7-1 CERTIFICATE OF COMPLIANCE

Counsel for Defendants The Kroger Company ("Kroger") and Fred Meyer Stores, Inc. ("Fred Meyer") (collectively, the "Grocers" or "Defendants") conferred with counsel for Plaintiff Sarah Vitort regarding the subject of this motion by telephone on November 3, 2020, but the parties were unable to reach agreement.

## MOTION

As explained in the following Memorandum of Law, the Grocers respectfully move for an order dismissing Ms. Vitort's Class Action Allegation Complaint, ECF No. 1 (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6), 8, and 9(b) with prejudice for failure to state a claim.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Ms. Vitort filed this putative class action Complaint to address the "troubling trend" of companies exploiting consumer demand for "minimally processed foods" without "unhealthy added sugars" or "additives."  (Compl., ECF No. 1, at ¶ 1.)  However laudable her ultimate goals, Ms. Vitort's claims against the Grocers are misguided:  Their product—"Just Fruit" spreadable fruit (the "Fruit Spread")—does not claim to be "minimally processed" or made without "added sugars" or "additives."  To the contrary, as demonstrated by the Complaint, the Fruit Spread includes ingredients made solely from "just fruit," e.g., "fruit syrup," "apple juice concentrate," and "citric acid."  This fundamental fact was plainly advertised on the product's label, confirmed by the ingredient disclosures, and readily observable to Ms. Vitort prior to her purchase.  Ms. Vitort cannot impose classwide liability against the Grocers based on her subjective, implausible, and unreasonable reading of the Grocers' "just fruit" description.

Straightforward pleading guidelines of this circuit preclude Ms. Vitort's claims.  As explained when these types of lawsuits first started flooding the courts, there is no cognizable claim based on purported confusion over the particular "fruits" included in a "fruit" product.  *See*

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ("One can hardly walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient. Every reasonable shopper knows that the devil is in the details."). Ms. Vitort may dislike the type or form of fruit ingredients in the Fruit Spread, but the Grocers' true statements of fact, in conformity with all federal regulations, cannot form a basis for a mislabeling class action. Ms. Vitort's claims based on her flawed theory all fail as a matter of law for the multitude of reasons cited below.

   *First*, Ms. Vitort's claims fail because the "just fruit" representation is not false or misleading under the controlling "reasonable consumer" standard. The crux of the Complaint is that the "just fruit" representation is false because the product contains more than the fruit (e.g., blackberry) pictured on the label, such as "fruit syrup" and "other sweeteners, added sugars, and additives such as 'pectin,' 'calcium citrate,' 'apple juice concentrate,' and 'citric acid.'" (Compl. ¶ 3.) The Fruit Spread, however, nowhere claims to be free of "sweeteners," "added sugars," or "additives," and Ms. Vitort does not and cannot identify a single ingredient that is not "just fruit." Courts routinely reject mislabeling claims based on putative confusion over the type or form of "fruit" contained in a "fruit" product. *See, e.g.*, *Manchouck v. Mondeléz Int'l, Inc.*, 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sep. 26, 2013) (dismissing claim based on "made with real fruit" representation because product was made with real fruit despite the plaintiff's characterization of the fruit ingredients as processed or mechanical). Ms. Vitort also cannot complain that the product contains "fruit" other than the featured flavor, e.g., "blackberry." *See McKinniss v. Sunny Delight Bevs. Co.*, 2007 U.S. Dist. LEXIS 96108, at *11 (C.D. Cal. Sep. 4, 2007) (granting motion to dismiss with prejudice because "the depiction of fruit on a product label is not a specific affirmation that a product contains a particular amount of fruit."). Here, the Fruit Spread's "just fruit" and "blackberry" characterizing flavor representations were both true and admittedly disclosed in full on the product label. Ms. Vitort

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

cannot manufacture consumer confusion based on her subjective expectations regarding the type and form of fruit that the product should contain.

*Second*, federal law preempts Ms. Vitort's Oregon state-law claims. The U.S. Food & Drug Administration ("FDA") has implemented detailed laws and regulations governing the labeling of food products. To ensure uniformity, Congress expressly provided that "no State . . . may directly or indirectly establish . . . any requirement . . . made in the labeling of food of the type required by" the FDA. 21 U.S.C. § 343-1(a). In particular, under federal law, the Grocers are required to label the name of the "characterizing flavor" of the Fruit Spread by its common name, e.g., "blackberry." 21 C.F.R. § 101.22(i)(1). Ms. Vitort cannot sue the Grocers based on their compliance with federal mandates in an attempt to impose contrary requirements under the guise of enforcing state law. *See Henry v. Gerber Prods. Co.*, 2016 U.S. Dist. LEXIS 52638 (D. Or. Apr. 18, 2016) (because product labels featuring "banana" flavor complied with section 101.22(i), plaintiffs' Oregon state-law claims were expressly preempted). Likewise, Ms. Vitort cannot sue the Grocers based on purported "omissions" relating to FDA requirements because only the FDA may enforce its laws. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (state law claims impliedly preempted if the plaintiff is suing "*because* the conduct violates" FDA law).

*Third*, Ms. Vitort's claims under Oregon's Unlawful Trade Practices Act ("UTPA") fail for additional reasons, including Ms. Vitort's inability to allege any "ascertainable loss" or the applicability of ORS 646.608(1)(i).

*Last*, Ms. Vitort has failed to satisfy basic pleading standards applicable to her claims. The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to Ms. Vitort's claims because she alleges a "unified course of fraudulent conduct" by the Grocers. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Even so, the Complaint fails to allege basic details regarding Ms. Vitort's purported purchases of the Fruit Spread. Making matters worse, Ms. Vitort relies on improper "group pleading" in an attempt to assign

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

liability to two separate defendants without identifying why Fred Meyer (a retailer) should be held liable for representations appearing exclusively on a product label.

The Court should dismiss Ms. Vitort's claims with prejudice based on these numerous and irremediable legal infirmities.

## II.    FACTUAL ALLEGATIONS

Defendant Kroger is an Ohio corporation and the parent company of Defendant Fred Meyer.  (Compl. ¶ 11.)  Fred Meyer owns and operates the chain of "Fred Meyer" grocery stores in Portland, Oregon.  (*Id.* ¶ 12.)  Ms. Vitort is a resident of Multnomah County who allegedly purchased the Kroger-branded Fruit Spread from a Fred Meyer grocery store in late 2019 or early 2020 and then again sometime in March 2020.  (*Id.* ¶¶ 2, 10, 31.)

The labels of Kroger's Fruit Spread product in the blackberry variety are pictured as follows on pages 7 and 8 of Ms. Vitort's Complaint:

 

Ms. Vitort alleges that the "just fruit" claim on the Fruit Spread is "demonstrably false." (Compl. ¶ 30.)  In particular, Ms. Vitort complains of the "large amounts of added sugars" and "additives" listed in the product's ingredient label.  (*Id.* ¶ 28.)  The ingredients of the product, as

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

pictured in the Complaint, are: "fruit syrup, blackberries, apple juice concentrate, pectin, citric acid, natural flavor, calcium citrate." (Compl. ¶¶ 28–29 & p. 8 (change in capitalization).) Ms. Vitort claims that these ingredients include "harmful added sugars" that consumers attempt to avoid due to their negative health effects. (*Id.* ¶¶ 20–21, 32.) There is no representation on the Fruit Spread regarding any "reduced sugar" or "no added sugar" claim. (*See id.* ¶ 22.)

Based on these allegations, the Complaint includes claims for false and misleading advertising in violation of Oregon statutory law. In particular, Ms. Vitort asserts causes of action under (1) ORS 646.608(1)(b), for "causing likelihood of confusion or misunderstanding"; (2) ORS 646.608(1)(e) and (g), for "unlawful representations"; (3) ORS 646.608(1)(e) and (g), for "failure to disclose lawfully required information"; (4) ORS 646.608(1)(i), for "false advertising"; (5) ORS 646.608(1)(t), for "failure to disclose material defect and/or nonconformity"; and (6) Oregon's implied warranty of merchantability law, ORS 72.3140 (claim mislabeled as being under ORS 646.605 *et seq.*). (Compl. at pp. 12–31.)

Ms. Vitort seeks to certify a class of "[a]ll persons in the State of Oregon who purchased Just Fruit since August 6, 2016." (Compl. ¶ 33.) Ms. Vitort is seeking on their behalf monetary relief "measured by the difference between the price paid for a product made of 'Just Fruit' and the lower market value of a product that is made primarily of sugary fruit syrup." (*Id.* ¶ 38.)

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating the sufficiency of a claim for relief, courts require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If plaintiffs fail to "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "[D]ismissal without leave to amend is proper if it is

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

clear that the complaint could not be saved by amendment." *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013).

## IV.    MS. VITORT'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

### A.    Ms. Vitort's Claims Each Fail Because Her Underlying Theory of Liability Is Implausible.

Ms. Vitort's claims under Oregon statutory law all fail because there are no plausible allegations that the Fruit Spread's "just fruit" labeling is false or misleading under the objective "reasonable consumer" standard.

#### 1.    Ms. Vitort Must Allege a False or Misleading Representation under a "Reasonable Consumer" Standard.

"To state a false labeling or advertising claim . . . plaintiff must affirmatively plead . . . that the statements at issue are either objectively false or at least likely to mislead a reasonable consumer." *Andriesian v. Cosmetic Dermatology, Inc.*, 2015 U.S. Dist. LEXIS 50502, at *9 (D. Or. Mar. 3, 2015) (analyzing Oregon UTPA and warranty claims under reasonable consumer standard); *see also Silva v. Unique Bev. Co., LLC*, 2017 U.S. Dist. LEXIS 179362, at *6 (D. Or. Oct. 30, 2017) ("[T]o state a false labeling claim under the UTPA, [a] 'plaintiff must affirmatively plead and prove that the statements at issue are either objectively false or at least likely to mislead a reasonable consumer.'"); *see also* ORS 646.608(1)(b) (UTPA forbids causing "likelihood of confusion or of misunderstanding"); ORS 646.608(1)(e) (UTPA forbids representations of qualities that products "do not have"); ORS 646.608(1)(g) (UTPA forbids representations of qualities if the products "are of another" quality); ORS 646.608(1)(i) (UTPA forbids advertisements with intent not to provide "as advertised"); ORS 646.608(1)(t) (UTPA forbids omission of "material nonconformity"); ORS 72.3140(2)(f) (implied warranty of merchantability claim requires allegation that goods do not "[c]onform to the promises or affirmations of fact made on the container or label").

Under this "reasonable consumer" standard as applied in the Ninth Circuit, a plaintiff must allege that a product's label is "likely to deceive a reasonable consumer." *Silva*, 2017 U.S.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Dist. LEXIS 179362, at *5 (citing Ninth Circuit appellate and district court cases applying reasonable consumer standard to various states' consumer protection statutes, e.g., *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016); *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)).  The Ninth Circuit "requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Ebner*, 838 F.3d at 965.  "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*; *see also Silva*, 2017 U.S. Dist. LEXIS 179362, at *6 (courts apply an "objective standard of what a reasonable consumer would understand the representation to be").

As explained by the Court in *Silva*, while this "reasonable consumer" inquiry generally involves factual considerations, "as with many fact questions, if the court determines that no reasonable juror could conclude that the product's label was not deceptive or misleading, dismissal on a Rule 12(b)(6) motion is appropriate."  2017 U.S. Dist. LEXIS 179362, at *5.  In other words, "[w]hile a court deciding a motion to dismiss must take a complaint's well-pleaded factual allegations as true, it also must determine, relying on its 'judicial experience and common sense,' whether those allegations amount to a 'plausible' claim" under the reasonable consumer test.  *Manchouck v. Mondeléz Int'l, Inc.*, 2013 U.S. Dist. LEXIS 138877, at *5 (N.D. Cal. Sep. 26, 2013) (quoting *Iqbal*, 556 U.S. at 679).

Courts routinely grant motions to dismiss under the reasonable consumer test where a plaintiff's allegations fail to establish consumers are "likely to be deceived" by the alleged misrepresentation.  *See Ebner*, 838 F.3d at 965–66 (affirming order granting motion to dismiss because average "rational consumer" in marketplace would not be misled given normal experience with product); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming order granting motion to dismiss because statements promising sweepstakes payout in exchange for purchasing magazine subscription are unlikely to deceive a "person of ordinary

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

intelligence"); *Azoulai v. BMW of N. Am. LLC*, 2017 U.S. Dist. LEXIS 57121, at *22 (N.D. Cal.

Apr. 13, 2017) ("Misrepresentation claims . . . require a showing that alleged statements or

omissions are 'likely to deceive' reasonable consumers.").[1]

The threshold reasonable consumer inquiry is uniquely susceptible to resolution through

a motion to dismiss where, as here, the sole alleged misrepresentation is presented on the label of

the product. *See Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 U.S. Dist. LEXIS 163337, at

*11 (C.D. Cal. Sep. 20, 2017) ("Where statements or depictions of ingredients on packaging are

truthful, as demonstrated by a review of the packaging at issue here, courts may dismiss claims

that those statements or depictions are misleading."); *Silva,* 2017 U.S. Dist. LEXIS 179362, at

*6–7 ("Cases suggest that it is appropriate to consider the entirety of a label in ascertaining

whether a reasonable consumer would find a product deceptive or misleading.") (collecting

authorities); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *8–9 (N.D. Cal. July 1,

2010) ("[W]here a court can conclude as a matter of law that members of the public are not

likely to be deceived by the product packaging, dismissal is appropriate.").  The product label at

issue in this case is pictured in the Complaint itself and reproduced above.  (*See* Compl. ¶ 26

("Through this labeling, which . . . was substantively identical throughout the Class Period,

Defendants advertised and marketed the Product as comprising 'just fruit'").)

The Court should therefore decide this threshold issue of the objective deceptiveness of

the Fruit Spread's label as a matter of law based on the product's objective label.

### 2.    Ms. Vitort Fails to Plausibly Allege that the Fruit Spread Is Deceptive to Any Reasonable Consumer.

Ms. Vitort has failed to allege any plausible claim under established law because nothing

about the "just fruit" representation on the Fruit Spread product is false or misleading.

---

[1] Most consumer protection actions are based on California's consumer protection
statutes, like the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*  The same
"reasonable standard," however, is applied to Oregon consumer protection claims like those at
issue in this case.  *See Andriesian*, 2015 U.S. Dist. LEXIS 50502, at *9 (analyzing Oregon
UTPA and warranty claims under reasonable consumer standard); *Silva*, 2017 U.S. Dist. LEXIS
179362, at *6 (same).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The Complaint purports to set forth several different theories of deception, including that the product is mislabeled because it (1) includes fruits other than the characterizing flavor, e.g., "blackberry" (Compl. ¶¶ 3, 26); and (2) is not composed of "just fruit" based on the inclusion of "large amounts of added sugars, and additives" (*id.* ¶¶ 26–32). Neither of these theories presents a plausible claim of consumer deception because the Fruit Spread (a) does not claim to be made exclusively with, e.g., blackberries, and (b) contains "just fruit," including blackberries and other fruit extracts.

   a.  **Ms. Vitort Fails to Allege That the Reference to the Characterizing Flavor Is Deceptive.**

As an initial matter, contrary to Ms. Vitort's interpretation, the Fruit Spread does not say that it only includes fruits of the characterizing flavor, e.g., blackberry. (Compl. ¶ 3.) This unreasonable interpretation of a product's labeling of its characterizing flavor cannot form the basis for any plausible claim under established law.

Ms. Vitort's theory of deception is modeled on *Williams*, in which the Ninth Circuit held that a fruit snack product was misleading because it did not contain all the fruits pictured on the product label. *See* 552 F.3d at 939 ("[T]he packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product."). This Court applied *Williams* to determine that a product that featured coconuts on the front label could deceive a reasonable consumer into believing that it included coconuts despite not listing coconut as an ingredient on the back label. *See Silva*, 2017 U.S. Dist. LEXIS 179362, at *13. This case presents a fundamentally different scenario where Ms. Vitort is claiming that a reasonable consumer would believe that a product's reference to a specific fruit (e.g., "blackberries") means that the product *only* includes that fruit.

As courts have observed, Ms. Vitort's inverse-*Williams* theory is not an appropriate or reasonable extrapolation from a reference to a characterizing flavor on a product label. *See Manchouck*, 2013 U.S. Dist. LEXIS 138877, at *10 ("Unlike *Williams* . . . [the products] do contain the fruits depicted and described on the front of the packaging. Thus, plaintiff's

Page 9 – MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

complaint is distinguishable from these actions in that it does not concern an affirmative

misrepresentation."); *McKinniss*, 2007 U.S. Dist. LEXIS 96108, at *11 (granting motion to

dismiss with prejudice because "the depiction of fruit on a product label is not a specific

affirmation that a product contains *a particular amount of fruit* whatsoever" because the FDA

"permit[s] illustrations of fruit on product labels to indicate that product's 'characterizing flavor,'

even where the product contains no ingredients derived from the depicted fruit."); *Workman*, 141

F. Supp. 3d at 1037 (dismissing claim that product labels displaying, e.g., "'plenteous quantities

of pumpkin' would lead a reasonable consumer to believe that those ingredients were the

primary ingredients in the puree pouch or fruit bar").  Like in those cases, the Fruit Spread is not

misleading because it includes ample amounts of the featured flavor, e.g., blackberry.  (Compl. at

p. 8.)  *See Manchouck*, 2013 U.S. Dist. LEXIS 138877, at *9 ("It is ridiculous to say that

consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or

raspberries,' rather than these fruits in a form amenable to being squeezed inside [the product].").

        As another district court dismissing a plaintiff's consumer protection claims under

*Iqbal*'s plausibility standard explained:

> One can hardly walk down the aisles of a supermarket without
> viewing large pictures depicting vegetable or fruit flavors, when the
> products themselves are largely made up of a different base
> ingredient.  Every reasonable shopper knows that the devil is in
> the details.  Moreover, any potential ambiguity could be resolved
> by the back panel of the products, which listed all ingredients in order
> of predominance, as required by the FDA.  As our court of appeals
> stated in this context, "reasonable consumers expect that the
> ingredient list contains more detailed information about the product
> that confirms other representations on the packaging."

*Workman*, 141 F. Supp. 3d at 1035 (quoting *Williams*, 552 F.3d at 939).  As recognized by the

Ninth Circuit, the back label is not an attempt to "correct" misrepresentations on the front label

but, rather, the proper and reasonable method of clarifying what "fruit" the product contains.

*See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("[Q]ualifiers in

packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the label to mislead.'  If, however, 'a back label ingredients list . . . conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not defeated.") (citation omitted).  Ms. Vitort cannot claim consumer confusion about the predominance of blackberries—here, the second most prominent ingredient in the Fruit Spread—by ignoring the product's ingredients list.  *See Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020) ("District courts also recognize that where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list."); *Silva*, 2017 U.S. Dist. LEXIS 179362, at *8 ("[A]n ingredient list alone cannot remedy an otherwise misleading or deceptive package but it still plays a part in assessing whether the package as a whole is misleading.").

The product is not called "just blackberries," and no reasonable consumer would so construe a statement about "just fruit."

### b.    Ms. Vitort Fails to Allege the Fruit Spread Contains Anything More Than "Just Fruit."

In addition, the "just fruit" representation is true and not misleading to any reasonable consumer.  As Ms. Vitort concedes, the ingredients of the product includes fruit syrup, blackberries, apple juice concentrate, citric acid, calcium citrate, and pectin.  (Compl. ¶ 28 & n.8.)  Fruit syrup (i.e., concentrated fruit juices),[2] blackberries (i.e., a pure whole fruit), and apple juice concentrate (i.e., another concentrated fruit) are forms of fruit.  The remaining ingredients are similarly "fruit" extractions, i.e., citric acid (which is an acid naturally found in citrus fruits),[3]

---

[2] The FDA has not defined fruit syrup.  Syrup is generally a defined as, e.g., "the concentrated juice of a fruit or plant."  *See Syrup,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/syrup (last accessed Nov. 4, 2020); *see also Syrup,* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/syrup (last accessed Nov. 4, 2020) ("[A] very sweet, thick liquid").

[3] 21 C.F.R. § 184.1033 ("Citric acid may be produced by recovery from sources such as lemon or pineapple juice . . . .").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

calcium citrate (the calcium from citric acid),[4] natural flavor (an extract from fruit),[5] and pectin (an extract from fruit).[6]

Even if these ingredients could—in other products—be derived from non-fruit sources, there is no such allegation in the Complaint, which is controlling under federal pleading standards. *See Iqbal*, 556 U.S. at 678 (to satisfy the basic pleading requirements of Rule 8, it is not enough to make allegations "merely consistent with" their favored explanation); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . ."). In particular, there is no allegation in the Complaint that any of these ingredients in the Fruit Spread were not made of "fruit." Ms. Vitort's apparent preference for a specific form of fruit does not create an actionable claim.

As district courts have repeatedly ruled in similar circumstances, there is no plausible claim of consumer deception based on the use of a processed form of "fruit" in a "fruit" product. *See Manchouck*, 2013 U.S. Dist. LEXIS 138877, at *5–10 (dismissing claim based on "made with real fruit" representation because product was made with real fruit despite the plaintiff's characterization of the fruit ingredients as processed or mechanical); *Chuang*, 2017 U.S. Dist. LEXIS 163337, at *12 ("Plaintiff contended that the labels are not truthful because they depict

---

[4] 21 C.F.R. § 184.1195 ("Calcium citrate (Ca3(C6H5O7)2.4H2O, CAS Reg. No. 813-0994-095) is the calcium salt of citric acid.").

[5] 21 C.F.R. § 101.22 ("The term natural flavor . . . means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.").

[6] 21 C.F.R. § 184.1588 (recognizing that pectins are affirmed as generally recognized as safe: "Pectin is produced commercially by extracting citrus peel, apple pomace, or beet pulp with hot dilute acid (pH 1.0 to 3.5, 70deg. to 90 deg. C)"); 21 C.F.R. 150.160 (authorizing the use of pectin in addition to fruit in jam products to compensate for deficiencies in the "natural pectin content of the fruit ingredient").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

images of *fruits*, but the products actually contain only fruit *juices* or *purees*. The Court finds

this unpersuasive. Just as cartons of orange juice might feature images of oranges, the fruit

snacks labels feature images of the fruits whose juices or purees are ingredients in

the fruit snacks."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017)

(dismissing claims that "Made with Real Fruit" was misleading and holding that "[i]t is not

misleading for a product to state it is made with real fruit when that statement accurately

represents that the product contains real fruit and does not misrepresent the type of fruit the

product contains."); *see also Solak v. Hain Celestial Grp., Inc.*, 2018 U.S. Dist. LEXIS 64270,

at *14 (N.D.N.Y. Apr. 17, 2018) ("In the present case, the list of ingredients included on the

Packaging makes abundantly clear that the Product contains only processed derivatives of the

pictured vegetables, and not the fresh vegetables themselves. It therefore strains credulity that

any consumer would honestly conclude that the Product contains any non-processed vegetables,

much less that a 'reasonable' consumer might do so.").

     Ms. Vitort's theory of liability is substantially identical to the one dismissed with

prejudice in *Manchouck*. There, the plaintiff alleged that a representation that defendant's

product was "made with real fruit" was false or misleading under the reasonable consumer test

because it included a processed "fruit purée." *Manchouck*, 2013 U.S. Dist. LEXIS 138877, at

*1–2. The district court rejected this theory as a matter of law because it was not "plausible" that

any reasonable consumer would be deceived that a representation regarding the inclusion of

"fruit" excluded the possibility of fruit in the form of a purée:

> Plaintiff has not met *Iqbal*'s plausibility requirement. Plaintiff has
> not plausibly alleged why the statement "made with real fruit"
> would not include mechanically separated fruit purée. This order
> agrees with the numerous decisions that have dismissed similar food
> labeling claims at the pleading stage. Where, for example, a plaintiff
> challenged the use of the word "apple" in the name of an Apple
> Straws product that contained puréed apples and "veggies" in a
> product made primarily of potatoes, the claim was rejected.
> The court held that, "it strains the boundaries of the English
> language — to say that products made primarily of potatoes are not
> made of potatoes. . . or that the words 'veggies' and 'apples,' when

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> used to describe products containing veggies and apples, are 'literal
> falsities.'"

*Id.* at \*6–7 (citing *Sensible Foods, LLC v. World Gourmet, Inc.*, 2012 U.S. Dist. LEXIS 21446, at \*17–18 (N.D. Cal. Feb. 21, 2012)). Ms. Vitort's claims similarly fail here because nothing about the "just fruit" statement is rendered false because it includes forms of fruit that she did not desire.

Ms. Vitort's real complaint is that the form of fruit included in the Fruit Spread is what she categorizes as "sweeteners," "additives," "sugars," and "syrup" as opposed to fruits. (Compl. ¶¶ 3–4, 28–29.) Ms. Vitort rails against the perceived evils of these additives and attributes them to the country's increasing incidents of "heart disease, diabetes, and weight gain." (*Id.* ¶¶ 20–22.) This theory fails because the Grocers made no representation that the Fruit Spread was free of "sweeteners," "additives," "sugars," or "syrup," or that the fruit contained therein would come in any specified form. (*See id.* at pp. 7–8.) The Fruit Spread only represented that it was made of fruit and disclosed exactly which fruit products it contained—without any deceptive statement about the form of those fruit ingredients and whether they might satisfy Ms. Vitort.

Any reasonable consumer concerned about the *type* or *form* of fruit in the Fruit Spread would simply read the ingredient label, which fully discloses the type and form of the ingredients. *See Workman*, 141 F. Supp. at 1035–36 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.") (quoting *Williams*, 552 F.3d at 939). In short, "if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Moore*, 966 F.3d at 1018. Common sense requires dismissal here.

### B.  Federal Law Preempts Ms. Vitort's Claims.

The unreasonableness of Ms. Vitort's purported confusion notwithstanding, the Court should dismiss all of her claims with prejudice because federal law preempts them. As explained below, Ms. Vitort's Oregon state-law claims are (1) expressly preempted because they seek to

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

impose requirements not identical to the federal food labeling regulations governing representations with respect to a food's primary recognizable flavor, and (2) impliedly preempted to the extent they are based on the Fruit Spread's purported non-compliance with federal food labeling regulations.

### 1.    Ms. Vitort Impermissibly Seeks to Impose Labeling Requirements Not Identical to Federal Law.

Under the Supremacy Clause of the United States Constitution, Congress has the power to preempt state law.  U.S. Const. art. VI, cl. 2 (stating that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").  Federal preemption of state law occurs in three scenarios: "(1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *CTIA v. City of Berkeley, Cal.*, 928 F.3d 832, 849 (9th Cir. 2019).

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399, the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343, *et seq*., and their implementing regulations detail the federal provisions prohibiting "misbranding" of food (21 U.S.C. § 331(b)) and grant the FDA exclusive authority to ensure that "foods are . . . properly labeled" on behalf of all consumers, *id.* § 393(b)(2)(A).  *See* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (noting the NLEA, amending the FDCA, was intended to "clarify and to strengthen [the FDA's] legal authority to require nutrition labeling on foods.").  These statutes ensure that uniform requirements will not devolve into a state-by-state patchwork of labeling schemes that would impede federal objectives.  *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide.").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

To ensure uniform labeling nationally, the NLEA contains an express preemption clause, providing that "no State . . . may directly or indirectly establish . . . any requirement . . . made in the labeling of food of the type required by," among others, 21 U.S.C. § 343(i) and § 343(k), "that is not identical to the requirements of such section."  21 U.S.C. § 343-1(a)(2) & (3). A requirement is "not identical" if it "directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4).

As such, state consumer protection laws like the UTPA and warranty laws are "preempted if they seek to impose requirements that contravene the requirements set forth by federal law."  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1113 (S.D. Cal. 2011) (interpreting 21 C.F.R. § 100.1(c)(4)) (citations omitted); *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014) ("[S]tate law or state law claims seeking to establish standards that differ from the FDCA's standards are expressly preempted."); *Peviani v. Hostess Brands*, *Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) (state law claims fail where they "impose a state-law obligation . . . not required by federal law").

Applying these standards, all of plaintiff's claims are expressly preempted because Ms. Vitort attempts to use state law to impose new requirements not identical with federal law. Federal regulations govern indirect and direct representations on food labels as to a food's primary recognizable flavor.  The relevant regulation provides:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and ***shall be declared in the following way***: (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, ***the name of the***

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> *food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor*, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food . . . .

21 C.F.R. § 101.22(i)(1) (emphases added).

Here, the Fruit Spread's label makes direct and indirect representations as to the Fruit Spread's primary characterizing flavor, e.g., blackberry, by having a picture depicting blackberries and having the word "Blackberry" in large, bolded font. The Fruit Spread's label squarely complies with subsection (i)(1) because the "common or usual name of the characterizing flavor," namely "blackberry" is "in letters not less than one-half the height of the letters used in the name of the food." (*See* Compl. ¶¶ 2, 29 (photos of the Fruit Spread's label).)

Despite the Fruit Spread label's compliance with section 101.22(i)(1), the gravamen of Ms. Vitort's Complaint is that the Fruit Spread contains ingredients other than blackberries. (*See* Compl. ¶ 3 ("Defendants uniformly represent that the Product contains only the fruit identified" but "[f]ruit syrup, not blackberries, is the first listed ingredient"); *id.* ¶ 26 ("Defendants advertised and marketed the Product as comprising 'just fruit'; namely, the fruit flavor [blackberry] identified on the front label."); *id.* ¶ 122 ("Defendants advertised the Product as 'Just Fruit' which is simply 'spreadable fruit' (namely, the specific fruit identified on the front label)"); *id.* ¶ 166 ("Despite its name and the other representations on its labeling, Just Fruit is not comprised of 'just fruit' (i.e., the fruit identified on the front label).")). The Fruit Spread's labeling is, however, in strict compliance with the federal regulations pertaining to characterizing flavors. *See McKinniss*, 2007 U.S. Dist. LEXIS 96108, at *11 ("FDA regulations permit illustrations of fruit on product labels to indicate the product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit."). Despite this, through her state law cause of actions, Ms. Vitort impermissibly seeks to "impose requirements that contravene the requirements set forth by federal law." *Ferrero*, 794 F. Supp. 2d at 1113. Therefore, Ms. Vitort's state law claims are expressly preempted.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Henry*, 2016 U.S. Dist. LEXIS 52638, is illustrative.  There, plaintiffs brought UTPA claims alleging the defendant's cereal snack box labels were misleading because the labels contained, *inter alia*, the word "Banana" and pictures of bananas.  *Id.* at *2.  The label stated "naturally flavored with other natural ingredients," and the product ingredient list on the back of the cereal stated that it contained less than two-percent of natural banana flavor as well as other ingredients.  *Id.*  The plaintiff viewed the label and alleged she was misled because the cereal snack was not the "fruit- or vegetable-packed health snacks that the labeling, promotions, and advertising make them out to be."  *Id.* at *3 (quotation mark omitted).  She asserted that the labels were "illegally misleading because the packages prominently feature pictures of fruits or vegetables but the [food did not] contain any fruits or vegetables."  *Id.* at *2.  Because the labels complied with section 101.22(i), the Court held plaintiffs UTPA claims were expressly preempted.  *Id.* at *18–20; *see also Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 891 (C.D. Cal. 2013) ("Courts have repeatedly found that state law claims challenging 'natural flavors' labels, accompanied by images or names of fruit, are preempted, because such labeling references the characterizing flavor of the food and is permitted by § 101.22.") (collecting cases).

Like in *Henry* and the cases cited therein*,* the Fruit Spread's labeling (with its written and visual representation of blackberries) complies with section 101.22(i).  For this reason, Ms. Vitort's UTPA and warranty claims, which attempt to impose requirements not identical with federal law, are expressly preempted and should be dismissed with prejudice.

### 2.    Ms. Vitort Impermissibly Seeks to Enforce Alleged Violations of Federal Law Through the UTPA.

In addition to the fact that Ms. Vitort's claims are expressly preempted, all of her purported "omission" claims, including the third and fifth causes of action for violation of Oregon's UTPA and warranty law, are "impliedly preempted because [they] conflict[ ] with the FDCA's enforcement scheme."  *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013).

The FDA is solely responsible for "investigating potential violations of the FDCA, and the Act provides the agency with a range of enforcement mechanisms, such as injunction

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

proceedings, civil and criminal penalties, and seizure." *Id.* (citing 21 U.S.C. §§ 332–34, 372). While private citizens may petition the FDA to take administrative action, 21 C.F.R. §§ 10.25(a) and 10.30, private enforcement of the FDCA is barred by section 337(a), which provides that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a).  Under section 337(a), state law claims will be impliedly preempted if the plaintiff is suing "*because* the conduct violates the FDCA." *Perez*, 711 F.3d at 1120 (quoting *In re Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010)); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (holding fraud claims were preempted because they "exist[ed] solely by virtue of the FDCA disclosure requirements."); *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 987 (D. Ariz. 2013) ("[S]tate law claims that seek only to enforce federal law, nothing more, are impliedly preempted.").

In Ms. Vitort's third and fifth causes of action, she expressly alleges the Fruit Spread failed to comply with a number of federal labeling requirements, including those pertaining to "statements of identity."  (*See* Compl. ¶¶ 89–120, 145–46.)  As a result, such causes of action are *solely based* on alleged violations of the FDCA.  This is plainly evidenced by the title of the third cause of action (*see* Compl., ¶ 89 ("Subsections 646.608(1)(e) and (1)(g): failure to disclose lawfully required information"))*,* as well as the allegations that form the basis of the third and fifth causes of action (*see, e.g.*, Compl. ¶ 91 ("Defendants fail to disclose information and/or failed to disclosure information in a particular way that was required by the [FDCA]."); *id.* ¶ 99 ("Defendants were legally required to disclose—and yet failed to disclose—the statement of identity."); *id.* ¶ 101 ("[E]ven if the statement of identity was disclosed (and again, it was not), it was not disclosed in the particular way the law required."); *id.* ¶ 105 ("Defendants thus failed to disclose legally required information"); *id.* ¶ 145 ("Alternatively, Defendants failed to disclose the information required by the [FDCA] on the Product's label.")).

Section 337(a) unequivocally bars Ms. Vitort's attempt to privately enforce the requirements of the FDCA under the guise of state law.  While "some states, including

California, have adopted statutes that expressly mirror the FDCA and provide a private cause of action for enforcing the state's version of the requirements," "Oregon . . . has not adopted such a statutory scheme . . . ." *Henry*, 2016 U.S. Dist. LEXIS 52638, at *24–25. As a result, to the extent that they seek to enforce alleged violations of federal law, Ms. Vitort's causes of action are impliedly preempted and should be dismissed with prejudice.

### C.    Ms. Vitort's UTPA Claims Fail for Additional Reasons.

Ms. Vitort's various claims under the UTPA independently fail because she failed to allege (1) an ascertainable loss, or (2) an actionable violation under subsection (i) of the UTPA.

#### 1.    Ms. Vitort Fails to Allege an Ascertainable Loss Caused by an Alleged Violation.

To state a claim under the UTPA, a plaintiff must allege an "*ascertainable loss* of money or property *as a result of* a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608." ORS 646.638(8)(a) (emphases added); *accord Allegro Corp. v. Only New Age Music, Inc.*, 2002 U.S. Dist. LEXIS 27449, at *42 (D. Or. Oct. 4, 2002). "The requirement that the loss be 'ascertainable' connotes generally that it is one 'capable of being discovered, observed, or established.'" *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117, 361 P.3d 3, 22 (2015). The "ascertainable loss must be 'a result of' the unlawful trade practice." *Id.* In other words, an "'ascertainable loss' requires allegations of an actual payment of money that is causally linked to defendants' actions." *Wood v. Nationstar Mortg., LLC*, 2017 U.S. Dist. LEXIS 128782, at *16 (D. Or. Aug. 14, 2017); *accord Fauley v. Wash. Mut. Bank, FA*, 2014 U.S. Dist. LEXIS 38460, at *11 (D. Or. Feb. 19, 2014) ("[R]egardless of the quantity of the plaintiff's loss, a causal link between the plaintiff's loss and the defendant's actions must exist to state a viable UTPA claim"). In the context of misrepresentations, a plaintiff must allege "reliance-in-fact" upon the misrepresentations in suffering the loss. *See Harney v. Associated Materials, Inc.*, 2018 U.S. Dist. LEXIS 8124, at *15–16 (D. Or. Jan. 18, 2018) ("Where, as here, the alleged violations are affirmative

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

misrepresentations, the causal element requires proof of reliance-in-fact by the consumer.")
(quoting *Feitler v. The Animation Celection, Inc.*, 170 Or. App. 702, 708, 13 P.3d 1044, 1047
(2000) (finding that in order for the plaintiff to prevail on his UTPA claim, he had to prove not
only that the seller had made false statements, but also that the plaintiff had relied on those
statements)); *Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003, 1006 (1977) (holding that
factual reliance is essential "when plaintiff claims to have acted on a seller's express
representations").

      Ms. Vitort only alleges that she "has standing" because she "suffered injury in fact in the
form of an ascertainable loss of money"' without any allegation of actual reliance.  (Compl.
¶¶ 31–32.)  For instance, Ms. Vitort does not allege that she read, viewed, or otherwise relied
upon the product's labeling in making her purchase decision.  *See Silva v. Unique Bev. Co., LLC*,
2017 U.S. Dist. LEXIS 93625, at *33 (D. Or. June 15, 2017) (dismissing UTPA claims because
"there is no allegation, for example, that Plaintiff would have done something differently or
declined to purchase the product absent the alleged misrepresentation"); *Mendoza v. Lithia
Motors, Inc.*, 2017 U.S. Dist. LEXIS 4716, at *12 (D. Or. Jan. 11, 2017) (dismissing UTPA
claims based on plaintiffs' failure to allege reliance and causation).

      Ms. Vitort also suggests that she is attempting to rely on a "diminished value" theory of
ascertainable loss.  To establish an ascertainable loss under a "diminished value" theory,
however, a plaintiff must allege facts that "the product as represented had a value greater than
the value of the product she actually received."  *Silva*, 2017 U.S. Dist. LEXIS 179362, at *23.
"Allegations suggesting that the product costs the same with or without the represented
characteristic cannot logically support an inference that the product without the feature is worth
less."  *Id.*  Therefore, unless allegations of "ascertainable loss" are supported by factual
averments that Ms. Vitort "'paid more money' and a 'higher price' because of the Grocers'
alleged misrepresentations," the claim fails to "pass muster under *Iqbal*."  *Id.* at *24.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Here, the Complaint fails to include any non-conclusory allegations supporting Ms. Vitort's contentions regarding "diminished value." (*See, e.g.*, Compl. ¶¶ 72 (conclusory allegation that a "just fruit" product "is inherently worth more").) There is no allegation that a product made of whole blackberry or fruit costs more or that any such product exists. Ms. Vitort fails to identify any misrepresentation she saw, read, or otherwise relied upon that caused her to attribute a higher value to the product she purchased, explain what she would have done differently had she known the true state of facts, or suggest how it affected her purchase decision.

Ms. Vitort's apparent theory that the allegation of a misrepresentation alone (i.e., a violation of ORS 646.608(1)) satisfies the UTPA's standing requirements would render the causation and ascertainable loss requirements a nullity. *See Silva*, 2017 U.S. Dist. LEXIS 93625, at *23–24 ("[A] plaintiff must prove: '(1) a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss').'"); *Fauley*, 2014 U.S. Dist. LEXIS 38460, at *12–13 ("Causation is an essential element of an UTPA claim under § 646.638, and Fauley's failure to plead causation in sufficient detail denies her claim the requisite plausibility.").

The Court should dismiss Ms. Vitort's UTPA claim based on failure to allege any ascertainable loss, let alone one caused by any alleged violation.

### 2.    Ms. Vitort Fails to Allege Violation of UTPA Subsection (i).

The UTPA restricts only the trade practices expressly enumerated in the statute. *See Pearson*, 358 Or. at 115; ORS 646.608(1). Subsection (i) of the UTPA forbids any defendant from "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." Ms. Vitort asserts that the Grocers violated this provision because they "advertised the Product as 'Just Fruit' but that "this was *not* the product provided." (Compl. ¶ 122.) This alleged conduct does not fit subsection (i)

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

because this subsection prohibits conduct such as "bait and switch" transactions, *Solano v. Kroger Co.*, 2020 U.S. Dist. LEXIS 107447, at *35 (D. Or. June 12, 2020) (magistrate's findings and recommendations), or situations where a defendant advertises a good but does not intend to supply the product or not to supply reasonably expected public demand, *see Horton v. Nelson*, 252 Or. App. 611, 621, 288 P.3d 967, 973 (2012) (holding plaintiff adequately alleged claim under subsection (i) where defendant sold product online, took money from the plaintiff, but never ordered the product from the manufacturer). Here, the gravamen of the Ms. Vitort's complaint is that the Product's label is misleading. There is no allegation that the Grocers did not intend to sell the product as advertised or to not meet customer demand. Ms. Vitort therefore fails to state a claim under subsection (i).

### D.    Ms. Vitort's Claims Also Fail to Adequately Plead Basic Factual Details.

In addition to the fatal deficiencies to Ms. Vitort's claims detailed above, her claims also fail under the heightened pleading requirements of Rule 9(b) because the Complaint does not set forth the circumstances of the Grocers' alleged fraud. Also, with respect to Fred Meyer, Ms. Vitort relies on improper group pleading allegations without identifying the Grocers' individual actions or control over the allegedly deceptive statements.

### 1.    Ms. Vitort Fails to Satisfy Federal Rule of Civil Procedure 9(b).

"In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103–04. Under Oregon law, a claim "sounds in fraud" if it is premised on such allegations of "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon;

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and (9) his consequent and proximate injury." *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1043 (D. Or. 2014) (quoting *Rice v. McAlister*, 268 Ore. 125, 128, 519 P.2d 1263, 1265 (1974)). Here, each of Ms. Vitort's claims against the Grocers sounds in fraud because each is premised on their "willful," "knowing," and "reckless" representations of "false" statements to "cause confusion" to consumers who did not know the truth and were harmed thereby. (*See* Compl. ¶¶ 6, 43, 51, 56–57, 64–65, 75–76, 83–84, 110, 116, 126–27, 134–35, 149, 154–55.)

The Ninth Circuit has unequivocally held that such allegations of a "unified course of fraudulent conduct" constitute claims that sound in fraud no matter the elements of the underlying causes of action. *See Kearns*, 567 F.3d at 1125; *see, e.g.*, *Vinci v. Hyundai Motor Am.*, 2018 U.S. Dist. LEXIS 139979, at *31 (C.D. Cal. Apr. 10, 2018) (applying Rule 9(b) to UTPA claim).[7] Ms. Vitort therefore must satisfy the requirements of Rule 9(b). In particular, "[t]o satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *accord Kearney*, 65 F. Supp. 3d at 1045 (D. Or. 2014) (granting motion to dismiss UTPA claims for failure to adequately allege necessary details under Rule 9(b)).

The particularized allegations Rule 9(b) requires are absent from the Complaint. Ms. Vitort alleges only that she purchased the "Product" from an unidentified "Fred Meyer grocery store" in the "Portland, Oregon municipal area" "[i]n or around late 2019-early 2020, and again in or around March 2020." (Compl. ¶ 31.) The "Product" is defined as Kroger's various "just fruit" items and not specifically the blackberry product pictured in the Complaint. (*Id*. ¶ 2.) There is no further specificity as to where or when Ms. Vitort made her purchases, or what she allegedly saw, read, or viewed with respect to the "Product" at the time of her purchase.

---

[7] The few contrary cases declining to apply Rule 9(b) to UTPA claims all involved distinct legal and factual circumstances. *See Silva v. Unique Bev. Co., LLC*, 2017 U.S. Dist. LEXIS 93625, at *38 (D. Or. June 15, 2017); *McKie v. Sears Prot. Co.*, 2011 U.S. Dist. LEXIS 47967, at *35–36 (D. Or. Feb. 22, 2011).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

These vague allegations do not satisfy Rule 9(b).  *See Ponvanit v. Superior Court*, 2018 U.S. Dist. LEXIS 32880, at *13 (C.D. Cal. Jan. 31, 2018) (allegations failed to satisfy Rule 9(b) because "Plaintiff alleges no particular facts regarding the specific contents of any alleged misrepresentations, the specific date the unidentified misrepresentations were made, the location of the unidentified misrepresentations, or the individual making the unidentified misrepresentations . . . ."); *Herndon v. Sci. Applications Int'l Corp.*, 2006 U.S. Dist. LEXIS 79520, at *8 (S.D. Cal. Oct. 31, 2006) ("When, as here, fraud is alleged against a company 'the absence of specification of any times, dates, places or other details of that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b).'") (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)); *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 U.S. Dist. LEXIS 199368, at *33 (C.D. Cal. Oct. 20, 2014) ("While they do allege when they *purchased* NJOY products, pleading the 'when' of the fraud requires that plaintiffs allege when they saw or heard the misleading statements.").

## 2.    Ms. Vitort Improperly Relies on Group Pleading.

Ms. Vitort also fails to plead any basic facts as to Defendant Fred Meyer Stores, Inc.  The only alleged misrepresentations identified with respect to the "Product" are the "just fruit" statements on Kroger's packaging.  (Compl. at pp. 7–8.)  Presumably, Ms. Vitort is seeking to sue Fred Meyer for selling Kroger's "Product," but none of the detailed allegations necessary to establish mislabeling claims against a retailer are present in the Complaint.  *See In re Hydroxycut Marketing and Sales Practices Litig.*, 299 F.R.D. 648, 656–57 (S.D. Cal. 2014) (requiring separate allegations as to purported misrepresentations made by retailer defendants as opposed to manufacturer defendants to establish retailers' direct "participation or control" over statements: "Holding retailers liable for all statements made on products that they sell would impose the type of secondary liability that has been rejected by courts.").

In an attempt to sidestep her pleading burden, Ms. Vitort makes generalized allegations that "Defendants" violated the law by "label[ing], market[ing], and/or sell[ing]" the Fruit Spread

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

containing purported false and misleading statements.  (*See* Compl. ¶ 2; *see also id.* ¶ 14 ("Defendants engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product").)  These statements are conclusory and constitute patently improper "group pleading" allegations that do not pass muster under any pleading standard.  *See Karkanen v. California*, 2018 U.S. Dist. LEXIS 135536, at *18 (N.D. Cal. Aug. 10, 2018) ("Courts consistently conclude that a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'") (collecting sources); *Barnett v. Becerra*, 2018 U.S. Dist. LEXIS 30704, at *15 (N.D. Cal. Feb. 26, 2018) ("[P]laintiff continues to use improper group pleading . . . [by] repeatedly refer[ring] to 'defendants' as a group."); *Fagbohungbe v. Caltrans*, 2014 U.S. Dist. LEXIS 22214, at *9 n.4 (N.D. Cal. Feb. 19, 2014) ("The general allegation regarding 'defendants' is also insufficient on its face because it does not identify which specific defendants . . . ."); *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 826 F. Supp. 2d 1180, 1192 (C.D. Cal. 2011) (allegations regarding a defendant's "responsibility for . . . advertising" and for "marketing" products were entirely "conclusory" because they provide no basis for what defendants did or how they purportedly caused plaintiffs' injuries); *see also In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 926 (C.D. Cal. 2012) (rejecting "[c]onclusory allegations that [defendant] advertises, promotes and sell[s its] health plans" based on misrepresentation).

Especially in the context of retailer liability, Ms. Vitort must offer specific allegations about the retailer's purported involvement in the alleged fraudulent scheme beyond selling a product made and labeled by others.  *See, e.g.*, *Hydroxycut*, 299 F.R.D. at 656; *Musgrave v. Taylor Farms Pac., Inc.*, 2019 U.S. Dist. LEXIS 229391, at *19 (N.D. Cal. Feb. 20, 2019) (dismissing claims against retailers based on failure to allege retailers' responsibility for product representations); *Tortilla Factory, LLC v. Health-Ade LLC*, 2018 U.S. Dist. LEXIS 157538, at *32–33 (C.D. Cal. July 13, 2018) ("[C]ourts have uniformly dismissed aiding-and-abetting false

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

advertising claims against retailers/distributors that are alleged to have done nothing more than sell a deceptively advertised product that is manufactured and advertised by a third party.") (collecting cases).  Ms. Vitort's failure to do so here further supports dismissal of her claims.

## V.    CONCLUSION

The Court should dismiss the Complaint with prejudice given Ms. Vitort's inability to cure the legal deficiencies outlined above.

DATED this 5th day of November 2020.

**DAVIS WRIGHT TREMAINE LLP**

By  s/ Jacob M. Harper
_____

**KEVIN H. KONO**, OSB #023528
Email:  kevinkono@dwt.com
1300 S.W. Fifth Avenue, Suite 2400
Portland, OR 97201-5610
Telephone: (503) 241-2300

**JACOB M. HARPER**, *pro hac vice*
Email:  jharper@dwt.com
**JAMES H. MOON**, *pro hac vice*
Email:  jamesmoon@dwt.com
**ANDREW G. ROW**, *pro hac vice*
Email:  andrewrow@dwt.com
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone:  (213) 633-6800

*Attorneys for Defendants*
*The Kroger Company and*
*Fred Meyer Stores, Inc.*