UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SARAH VITORT, a consumer residing in Oregon, individually and on behalf of all situated, | Case No. 3:20-cv-01317-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| THE KROGER COPMANY, an Ohio corporation, FRED MEYER STORES, INC., an Ohio corporation, and DOES 1 through 100, inclusive, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Sarah Vitort ("Virtort") filed this action individually and on behalf of Oregon

consumers against defendants The Kroger Company ("Kroger") and Fred Meyer Stores, Inc.

("Fred Meyer") (collectively "Defendants"), alleging Defendants labeled, marketed, and/or sold a

PAGE 1 - FINDINGS AND RECOMMENDATION

Kroger-branded food item named "Just Fruit" ("Product") which contained, in addition to fruit, sweeteners and other additives. Vitort asserts claims for violations of Oregon's Unlawful Trade Practices Act (OR. REV. STAT. §§ 646.605-646.652) ("Act") and breach of the implied warranty of merchantability under Oregon's Uniform Commercial Code – Sales (OR. REV. STAT. §§ 72-101-72.8200) ("Code"). Currently before the court is Defendants' motion to dismiss Vitort's August 6, 2020 complaint ("Complaint"), for failure to state a claim based on implausibility, federal preemption, and lack of an ascertainable loss. Alternatively, Defendants assert Vitort's allegations fail to meet the pleading standards for fraudulent conduct.

The court finds Vitort fails to state a plausible claim under both the Act and the Code because the Product's label was not false and would not mislead a reasonable consumer. The court also finds her claims that rely solely on violations of a federal statute are impliedly preempted. Accordingly, Defendants' motion to dismiss should be granted.[1]

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

---

[1] Vitort also names as defendants "Does 1 through 100," identified as other entities "involved in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling and/or sale" of the product at issue. (Compl. ECF No. 1, ¶ 13.) "As a general rule, the use of 'John Doe' to identify a defendant is not favored. However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Vitort has had over a year, more than ample time, to discover the names of the Doe defendants and has not amended the Complaint to add then. Accordingly, the court should dismiss the Doe defendants.

PAGE 2 - FINDINGS AND RECOMMENDATION

*Background*

Kroger is the owner-operator of various grocery stores, including Fred Meyer.  (Compl. ¶ 11.)  Vitort purchased the Product at a Fred Meyer grocery store on two occasions on or before March 2020.  (Compl. ¶ 31.)  The label for the Product displays the term "*JUST FRUIT*" in medium type above the word "BLACKBERRY" in large type above the term "SPREADABLE FRUIT" in small type, and prominently features a picture of two blackberries at the top of the label.  (Compl. ¶ 2.)  The back of the label lists the ingredients as "FRUIT SYRUP, BLACKBERRIES, APPLE JUICE CONCENTRATE, PECTIN, CITRIC ACID, NATURAL FLAVOR, CALCIUM CITRATE," with 10 grams of total sugar, including 8 grams of added sugars.  (Compl. ¶ 29.)

Vitort alleges the Product label "uniformly represent[s] that the Product contains only the fruit identified (in this example, blackberries)."  (Compl. ¶ 3.)  She then claims:

> "Reasonable consumers, like Plaintiff, have suffered an ascertainable loss of money, measured by the difference between the price paid for a product made of 'Just Fruit' and the lower market value of a product that is made primarily of sugary fruit syrup.  As a result of Defendant[s'] illegal conduct, the purchase price of the Product was greater than its objective market value."

(Compl. ¶ 4.)  Vitort seeks certification of the class, a finding Defendants committed the alleged violations, "actual or statutory damages of $200" for each class member, prejudgment interest, attorneys' fees, and costs.  (Compl. at 31-32.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2) (2020).  A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

PAGE 3 - FINDINGS AND RECOMMENDATION

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909, at *4 (9th Cir. Sept. 12, 2012)(quoting *Iqbal*, 556 U.S. at 679) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'").

*Discussion*

I. Violations of the Act

Vitort alleges Defendants engaged in practices deemed "unlawful" under the Act based on the alleged improper or misleading labeling of the Product. Vitort specifically alleges Defendants violated OR. REV. STAT. §§ 646.608(1)(b), 646.608(1)(e), 646.608(1)(g), 646.608(1)(i) and/or 646.608(1)(t), which provide:

> (1)  A person engages in an unlawful practice if in the course of the person's business, vocation, or occupation the person does any of the following:
>
> *  *  *
>
>      (b)  Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estates, goods, or services.
>
> *  *  *

PAGE 4 - FINDINGS AND RECOMMENDATION

(e)    Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connections that the person does not have.

\* \* \*

(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another.

\* \* \*

(i)    Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity.

\* \* \*

(t)   Concurrent with tender of delivery of any real estate, goods, or services fails to disclose any known material defect or material nonconformity.

Defendants move to dismiss, arguing the Product's "'just fruit' representation is not false or misleading under the controlling 'reasonable consumer' standard," Vitort's claims are preempted by federal law, specifically laws implemented by the United States Food and Drug Administration ("FDA"), and Vitort failed to allege the requisite ascertainable loss.  (Defs.' Mot. to Dismiss Pl.'s Class Action Allegations Compl., ECF No. 16 ("Mot."), at 2-3.)

A.  *Reasonable Consumer Standard*

Vitort's claims under the Act are based on the presence of added sugars and altered fruit ingredients in the Product.  In her First Claim for Relief, she alleges Defendants violated OR. REV. STAT. § 646.608(1)(b) ("Section B") by naming and labeling the Product "Just Fruit" even though its primary ingredient is fruit syrup with significant added sugars, thereby "causing the likelihood of confusion or misunderstanding as to the source of goods."  (Compl. ¶ 52.)  In her Second Claim

PAGE 5 - FINDINGS AND RECOMMENDATION

for Relief, Vitort alleges Defendants violated OR. REV. STAT. § 646.608(1)(e) ("Section E") and OR. REV. STAT. § 646.608(1)(g) ("Section G") by making unlawful representations, specifically, that the Product has characteristics or qualities that it does not have and that the Product is of a particular standard, quality, or grade when it is not.  (Compl. ¶ 71.)  Vitort again relies on allegations "the Product is primarily sourced from sugary fruit syrup and contains significant added sugars" and "contains far more that 'just fruit.'"  (Compl. ¶¶ 71, 74.)  Her Third Claim for Relief, which also alleges a violation of Section E and Section G, is based on an alleged description of the Product "in a manner that suggests that [Added Sugars are] absent" which is information that must be included in a "statement of identity disclosure" under federal law.  (Compl. ¶¶ 94, 97.)  Vitort alleges Defendants falsely advertised the "Product as 'Just Fruit' which is simply 'spreadable fruit'" when the Product consisted "primarily of sugary fruit syrup and contain[ed] significant added sugars" in support of her Fourth Claim for Relief alleging a violation of OR. REV. STAT. § 646.608(1)(i) ("Section I").  (Compl. ¶ 122.)  Finally, her Fifth Claim for Relief alleges Defendants violated OR. REV. STAT. § 646.608(1)(t) ("Section T"), based on a failure to disclose a material defect or nonconformity – that the Product "was significantly more than 'just fruit'; namely one was that was primarily sourced from harmful added sugars and fruit syrup."  (Compl. ¶ 144.)

Defendants contend "nothing about the 'just fruit' representation on the [Product] is false or misleading" because the Product "contains just fruit," including the named fruit and "other fruit extracts," and represent all of the ingredients in the Product "are commonly derived from 'just fruit' sources."  (Mot. at 8-9; Defs.' Reply in Supp. of Mot. to Dismiss Pl.'s Class Action Allegation Compl., ECF No. 23 ("Reply"), at 1.)  Vitort counters her claim relies both on the term "Just Fruit" and on the term "Spreadable Fruit," and she argues the Product contains more than

PAGE 6 - FINDINGS AND RECOMMENDATION

just spreadable fruit.[2]  (Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss Pl.'s Class Action Allegation

Compl., ECF No. 20 ("Opp'n"), at 9-10.)

Under Oregon law, the question whether a product's label constitutes a misrepresentation

under the Act "is determined based on an objective standard of what a reasonable consumer would

understand the representation to be[.]"  *Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 135 n.26

(2015).  Or, as described previously by another judge in this district, "[t]o state a false labeling or

advertising claim under [the Act], plaintiff must affirmatively plead and prove that the statements

at issue are either objectively false or at least likely to mislead a reasonable consumer."  *Andriesian*

*v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1638729, at *3 (D. Or. March 3,

2015), *adopted*, 2015 WL 1925944 (D. Or. April 28, 2015).  On this point, the Ninth Circuit

cautions:  "This requires more than a mere possibility that [a] label 'might conceivably be

misunderstood by some few consumers viewing it in an unreasonable manner.'  Rather, the

reasonable consumer standard requires a probability 'that a significant portion of the general

consuming public or of targeted consumers, acting reasonably in the circumstances, could be

misled.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter &*

*Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

"Generally, whether a product's labels are deceptive under a consumer protection statute

is a question of fact for the jury."  *Silva v. Unique Beverage Co.*, No. 3:17-cv-00391-HZ, 2017

WL 4896097, at *3 (D. Or. Oct. 30, 2017) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934,

---

[2] While the Complaint could be viewed to assert a claim based on the inclusion of fruit other than the fruit identified and depicted on the label of the Product and that Defendants have moved against such a claim, Vitort did not address this claim in her responsive pleading and, apparently, does not intend to pursue such claim.

PAGE 7 - FINDINGS AND RECOMMENDATION

938-39 (9th Cir. 2008)).  Courts have, however, dismissed claims alleging violations of consumer

protection statutes at the pleading stage where it is clear "no reasonable juror could conclude that

the product's label was not deceptive or misleading."  *Silva*, 2017 WL 4896097, at *3 (collecting

cases where courts recognized dismissal was appropriate where court can conclude, as a matter of

law, members of public are not likely to be deceived by product packaging).

The term "Just Fruit" displayed prominently on the Product label would lead most

consumers to conclude the Product contains only fruit products.  Moreover, the term "Spreadable

Fruit" on the Product label implies the fruit contained in the Product is in a form that is capable of

being spread.  In this context, "spread" is defined as "to distribute over an area" or to "apply on a

surface."[3]  Consequently, as long as the Product contains only fruit products in a form that can be

distributed over an area or applied on a surface, the label would not be inherently misleading or

confusing to a reasonable consumer.  Defendants do not dispute this conclusion but argue all of

the ingredients of the Product are derived from fruit as described on the label.  As a result, the

Product label properly describes the ingredients of the Product and would not confuse a member

of the public with respect to the contents of the Product.

Vitort alleges the product contains, despite its labeling as "'Just Fruit,' large amounts of

sugars and other additives such as 'pectin,' 'calcium citrate,' 'apple juice concentrate,' and 'citric

acid[]'", making "demonstrably false" Defendants' 'just fruit' claim.  (Compl. ¶¶ 28, 30.)  She

argues fruit syrup and pectin cannot be characterized as actual fruit, and further contends the term

"spreadable fruit" excludes calcium citrate, apple juice concentrate, and citric acid because

---

[3]  MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/spread (last
visited on September 9, 2021).

"common sense dictates that a reasonable consumer would not consider these ingredients alone to constitute 'spreadable fruit.'"  (Opp'n at 9-10.)

            1.  Fruit Syrup

Vitort argues fruit syrup necessarily "consists mostly of added sugar."  (Opp'n at 8.)  In support of this proposition, she offers two United State Custom Court cases decided in the early 1950's in which the court found fruit syrup is commonly understood to be a "mixture of sugar and fruit juices" made "by mixing sugar with fruit or by cooking fruit with sugar and water."[4]  (Opp'n at 9.)  But current regulations and comments supporting recent amendments to those regulations make clear the FDA recognizes added sugars in fruit syrups may be derived solely from fruit sources.  *See* 20 C.F.R. 101.9(c)(6)(iii) (2021).  The current regulations provide that when the added sugars in a product exceed one gram per serving, nutrition labels must include "a statement of the number of grams of added sugars in a serving."  *Id*.  The regulations explain:  "[a]dded sugars are either added during the processing of foods, or are packaged as such, and include sugars (free, mono and disaccharides), sugars from syrups and honey, and sugars from concentrated fruit or vegetable juices that are in excess of what would be expected from the same volume of 100 percent fruit or vegetable juice of the same type."  *Id*.

In 2016, the FDA amended their "labeling regulations for conventional foods and dietary supplements to provide updated nutrition information on the label to assist consumers in maintaining healthy dietary practices."  FOOD AND DRUG ADMIN. ORDER; FINAL RULE: FOOD LABELING; REVISION OF THE NUTRITION AND SUPPLEMENT FACTS LABELS ("ORDER"), 81 FR

---

[4] Vitort cited *Sun Rich Bev. Co. v. United States*, 25 Cust. Ct. 70 (1950) and J*ohn Sexton & Co. v. United States*, 29 Cust. Ct. 114 (1952).

33742-01, at *33742 (May 20, 2016).  The FDA acknowledged fruit concentrates "are a highly

concentrated source of sugar" and "are increasingly added to food for sweetening purposes." *Id.*

*at* *33833-34.  The FDA observed "it is important for consumers to be aware that when products

are sweetened with concentrated fruit or vegetable juices; the sugars and calories that they

contribute to products are like any other source of added sugars.  When added to foods for the

purpose of sweetening, we consider the sugars in a fruit concentrate[] which are used for

sweetening purposes to be added sugars." *Id*. at *33834.

      The FDA distinguished fruit concentrates from fruit syrups, explaining "there are syrup-

like products made by concentrating fruit juice that has been processed specifically to remove

organic acid, minerals, and insoluble fruit materials.  These types of products are not fruit juice

concentrates, but are fruit syrups.  All of the sugar contents in these types of ingredients should be

declared as added sugars on the label." *Id*.  The FDA responded to a comment recommending

"that mono and disaccharides from any pure (*i.e.* with no added sugars) fruit ingredient, such as

juices, concentrates, fruit pieces, pulps, and purees should not count as added sugars if these

ingredients are not added for sweetening purposes," in this way:

> We decline to revise the rule as suggested by the comment.  We agree that whole
> fruit, fruit pieces, pulps, purees, 100 percent fruit juices, and certain fruit juice
> concentrates should not be considered added sugars because they are nutrient rich
> and maintain the basic properties of a fruit, which is not considered to be an added
> sugar.  We have, in the final rule's definition of added sugars, excluded whole
> fruits, fruit pieces, pulps, purees, and certain concentrated fruit juices that are
> reconstituted to full strength or that may be added to other fruit juices, jellies, jams,
> and preserves under our standards of identity.  However, we consider other mono
> and disaccharides from fruit ingredients to be added sugars.  Sugars from fruits as
> well as fruit juices can be isolated (removed from the fruit), concentrated (decreased
> in volume by removing water), and stripped of nutrients such that they are
> essentially sugars that provide a concentrated source of calories to a food without

PAGE 10 - FINDINGS AND RECOMMENDATION

other redeeming qualities (e.g. fruit syrups).  Therefore, we are not excluding all
mono and disaccharides from any pure fruit ingredient

*Id*. at *33835.

The FDA makes clear fruit syrups contain added sugar which can derive from processed
fruits or fruit juices and that such sugars, whether from fruits or other sources, must be listed as an
added sugar on a product's nutrition label.  Consequently, the added sugars in the fruit syrup found
in the Product are just as likely to be from processed fruit as other sugar sources.

Even assuming Vitort's assertion that fruit syrup consists mostly of added sugar is true, the
added sugar could be fruit based and Vitort does not allege otherwise.  Rather her claims are based
on an assumption the added sugars in the Product do not derive from fruit sources.  However, in
light in of the FDA's clear statement that added sugars in fruit syrups can come from processed
fruit or fruit juice, Defendants' representation of the Product as "Just Fruit" is not inherently false
or misleading.  Consequently, the labeling of the Product does not inherently cause a likelihood of
confusion or misunderstanding with respect to the added sugars in the Product.

2.  Pectin

"Pectin" is "a soluble fiber found in most plants.  It is most abundant in apples, plums, and
the peel and pulp of citrus fruit."  See https://www.webmd.com/vitamins-and-supplements/pectin-
uses-and-risks (last visited on September 9, 2021).  Additionally, it is defined as "any group of
water-soluble colloidal carbohydrates of high molecular weight found in ripe fruits, such as apples,
plums, and grapefruit, and used to jell various foods, drugs, and cosmetics."  *See*
https://www.yourdictionary.com/pectin (last visited September 9, 2021).  Vitort concedes pectin
is an "isolated constituent of a fruit" but argues that because pectin is isolated and extracted from

fruit by an artificial process using "synthetic substances" such as "hot dilute acid," "ethanol," or "isopropanol," pectin is considered "distinct from naturally occurring fruit." (Opp'n at 9.)

First, the term "Just Fruit" does not equate to only "naturally occurring fruit." Second, the use of an "artificial process" in altering the natural form of the fruit, such as squeezing fruit to make fruit juice or boiling and forcing apples through a sieve to create applesauce, does not mean the resulting juice or applesauce is no longer comprises just fruit. Finally, pectin may be created at home by simply boiling, straining, and reducing fruit (apples or orange pith) and water, with or without lemon juice.[5] That some methods involve the use of synthetic non-fruit substances does not establish the non-fruit additives remain after the process. Vitort fails to allege the Product contains these synthetic substances and, even assuming a small trace of these substances remain in the pectin used in the Product, a reasonable consumer would not consider the use of such pectin made the "Just Fruit" label false, deceptive, or misleading.

### 3. Spreadable Fruit

Vitort asserts "the phrase 'spreadable fruit' would appear to exclude the other fruit extractions, specifically 'calcium citrate,' 'apple juice concentrate,' and 'citric acid.'" (Opp'n at 9.) While conceding "these ingredients are derived from fruit and may theoretically be 'spreadable,'" Vitort argues "common sense dictates that a reasonable consumer would not consider these ingredients alone to constitute 'spreadable fruit.'" (Opp'n at 9-10.) She notes

---

[5] See   https://www.foodnetwork.com/recipes/homemade-pectin-recipe-1926449   (last visited September 9, 2021);   https://www.mountainfeed.com/blogs/learn/37065729-make-your-own-pectin-for-jams-jellies-homemade-apple-pectin-recipe   (last visited September 9, 2021); https://www.escoffier.edu/blog/recipes/how-to-make-fruit-pectin (last visited September 9, 2021); https://www.thespruceeats.com/homemade-citrus-pectin-1327833 (last visited September 9, 2021).

calcium citrate is a "fine white, odorless powder" which is "not a typical product one would expect to spread over a piece of toast."  (Opp'n at 10.)

In the absence of express language tying the term "spreadable fruit" to the specific ingredients, such as "made with spreadable fruit" or "made only with spreadable fruit," a reasonable consumer would conclude the term described the Product as "spreadable," rather than describing each of the ingredients in the Product as individually or independently "spreadable." Additionally, the use of the term "Spreadable Fruit" rather than "Spreadable Fruits" further supports the finding the terms relates to the Product as a whole, not the individual ingredients in the Product.  Moreover, a reasonable consumer would not interpret a product identified as "Just Fruit" in a spreadable form would contain only unaltered fruit products.  Clearly, any "spreadable fruit" product must be crushed, blended, or pureed to some degree and likely contains additional ingredients to allow the fruit to be distributed over an area or applied on a surface.  Were the court to adopt Vitort's interpretation of the term "spreadable fruit," any fruit in its natural form would not be allowed – a blackberry, orange, or apple are not "spreadable fruit" in their natural form.

4. Conclusion

Vitort's claims under the Act are based on the likelihood of confusion or misunderstanding in violation of Section B, unlawful representations and failure to disclose required information in of Section E and Section G, false advertising in violation of Section I, and failure to disclose a material defect or nonconformity in violation of Section T.  These claims rely on Defendants' naming the Product "Just Fruit" and use of the term "Spreadable Fruit" and Vitort's assertion these labels represent the Product consists solely of natural, unaltered fruit with no added sugar. However, the ingredients listed on the Product are derived primarily, if not solely, from fruit

sources, including the "added sugars" in the fruit syrup.  Consequently, to the extent the Product's label contains a representation the Product is made solely from fruit sources and is a spreadable fruit, such representations are not objectively false.  Furthermore, the Product's label is not likely to deceive a reasonable consumer.

The "Just Fruit" and "Spreadable Fruit" representations are not likely to cause confusion or a misunderstanding, are not false or misleading, do not constitute false advertising, and do not fail to disclose a material defect or nonconformity.  Defendants' motion to dismiss should be granted with respect to Vitort's First, Second, Third, Fourth, and Fifth Claims for Relief alleging violations of the Act.

B. Preemption

Defendants seeks dismissal of Vitort's claims alleging violations of the Act, arguing they are impliedly preempted by federal law "to the extent they attempt they are based on the Fruit Spread's purported non-compliance with federal food labeling regulations."[6]  (Mot. at 15.)  Two of Vitort's claims under the Act appear to be based, at least to some degree, on Defendants' failure to comply with federal law, specifically, the "Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq." ("FDCA")."  (Compl. ¶ 92.)  Vitort's Third Claim for Relief alleges violations of Section E and Section G based on an alleged failure to disclose information "in a particular way that was required" by the FDCA.  (Compl. ¶ 92.)  She expressly alleges: "By describing the

---

[6] Defendants also move to dismiss Vitort's claims that challenge Defendants' characterization of the Product's "primary recognizable flavor".  (Mot. at 14-15.)  In her opposition, Vitort states that her "claims do not challenge Defendants' use of the word "Blackberry" to characterize the Product's primary flavor."  (Opp'n at 29.)  Consequently, the court need not address this portion of Defendants' preemption argument.

PAGE 14 - FINDINGS AND RECOMMENDATION

Product as 'Just Fruit,' Defendants are '[d]escrib[ing] the food or an ingredient therein in a manner that suggests that [Added Sugars are] absent,' rendering 'Just Fruit' an 'implied nutrient content claim' under 21 C.F.R. §101.13(b)(2)."  (Compl. ¶ 94.)  Similarly, in support of her claim under Section T, Vitort alleges Defendants "failed to disclose the information required by the [FDCA] on the Product's label" identifying the addition of "harmful added sugars and fruit syrup" as a material "defect and nonconformity."  (Compl. ¶¶ 144-45.)

There is no private right of action under the FDCA for a manufacturer's violation of its provisions, including the prohibition against the sale or distribution of misbranded devices.  *See* 21 U.S.C. § 337(a) ("proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *see also, Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 349, n.4 (2001)* ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with [its] provisions.").  "To allow a private party to essentially enforce the FDCA through state law would upset the balance of objections the FDA strives to maintain." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 987 (D. Ariz. 2013).  The Ninth Circuit explained a state-law claim must fit into a narrow gap to escape express and implied preemption by the FDCA: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In Re Medtronic*, 623 F.3d 1200, 1204 (8th Cir. 2010) (citation and internal quotations omitted)).  Claims based solely on a violation of the FDCA rather than on state law are impliedly preempted. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1232 (9th Cir. 2013); *see also*

*Nguyen v. Cree, Inc.*, Case No. 3:18-cv-02097-SB, 2019 WL 7879879, at *5 (D. Or. Nov. 6, 2019) (court found plaintiff's state law claims impliedly preempted to the extent they "simply reiterate federally required disclosures.").

The court has found Vitort fails to state a viable claim under the Act and recommends these claims be dismissed, leaving only alleged violations of the FDCA found in Vitort's Third and Fifth Claims for Relief.  In the absence of the state law claims, Vitort seeks to enforce the express terms of the FDCA, specifically an alleged failure to disclose information "in a particular way that was required" by the FDCA or an alleged failure "to disclose the information required by the [FDCA] on the Product's label."  Consequently, the claims remaining in Vitort's Third and Fifth Claims for Relief are based solely on conduct that violates the FDCA and are impliedly preempted.

*C.  Ascertainable Loss*

Vitort alleges she purchased the Product with the belief it contained just fruit but she "actually received an inferior product made primarily of fruit syrup, contained multiple other additives, and derived much of its sweetness from harmful added sugars . . . inherently worth less than the Product as represented."  (Compl. ¶ 32.)  Defendants move to dismiss the claims under the Act based on the failure to allege the requisite ascertainable loss or actual reliance.  Because the court has recommended the dismissal of Vitort's claims under the Act based on implausibility and implied preemption, Defendants' attacks on Vitort's allegations of damages resulting from her purchase of the Product are redundant and unnecessary, and thus will not be addressed.

II.  Violations of the Code

In her Sixth Claim for Relief, Vitort asserts Defendants breached the implied warranty of merchantability in violation of the Code.  Specifically, she alleges the Product "was not in

PAGE 16 - FINDINGS AND RECOMMENDATION

merchantable condition and/or fit for its ordinary purposes because it did not '[c]onform to the promises or affirmations of fact made on the container or label" as required by OR. REV. STAT. § 72.3140(2)(f).  (Compl. ¶ 166.)  Alternatively, Vitort alleges "Defendants breached the implied warranty of merchantability by failing to provide a product labeled in accordance with federal labeling laws."  (Compl. ¶ 167.)

It is evident from these allegations Vitort again relies on the veracity of the "Just Fruit" and "Spreadable Fruit" representations in support of her claim under the Code.  As such, her claim under the Code essentially mirrors her claims under the Act and hinges on her claim the Product's label was false or misleading.  The court has found the Product's label was not false or misleading under the Act, analysis equally applicable to Vitort's claim under the Code.  *See Andriesian*, 2015 WL 1638729, at *3-*4 (court considered claims alleging violations of the Code and the Act under the same standard).  Consequently, Vitort also fails to state a viable claim under the Code. Moreover, as with her claims under Act, her alternative claim that Defendants' "failure to provide a product labeled in accordance with federal labeling laws," is impliedly preempted by the FDCA.

### Conclusion

Defendants' motion (ECF No. 16) to dismiss should be GRANTED.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due within seventeen (17) days.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

\ \ \ \ \

\ \ \ \ \

PAGE 17 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of September, 2021.

_____
JOHN V. ACOSTA
United States Magistrate Judge

PAGE 18 - FINDINGS AND RECOMMENDATION