**Stephen Piucci, OSB # 821056**
steve@piucci.com
**Joe Piucci, OSB # 135325**
joe@piucci.com
PIUCCI LAW, LLC
900 SW 13th, Suite 200
Portland, OR 97205-1707
Tel: (503) 228-7385
*Lead / Local Counsel for Plaintiff*

**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
CASEY LAW FIRM, LLC
PO Box 4577
Frisco, CO 80443-4577
Tel: (970) 372-6509
*Counsel for Plaintiff*

**Gillian L. Wade (*pro hac vice*)**
gwade@mjfwlaw.com
**Sara D. Avila (*pro hac vice*)**
savila@mjfwlaw.com
**Marc A. Castaneda (*pro hac vice*)**
mcastaneda@mjfwlaw.com
MILSTEIN JACKSON
FAIRCHILD & WADE, LLP
10990 Wilshire Blvd., 8th Floor,
Los Angeles, CA 90024
Tel: (310) 396-9600
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SARAH VITORT, a consumer residing in Oregon, individually and on behalf of all others situated, | Case No. 3:20-cv-01317-AC |
| Plaintiff, | |
| v. | **PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S FINDINGS AND RECOMMENDATION** |
| THE KROGER COMPANY, an Ohio corporation, FRED MEYER STORES, INC., an Ohio corporation, and DOES 1 through 100, inclusive, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... i

INTRODUCTION ...................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ................................................................ 1

RELEVANT PROCEDURAL BACKGROUND ........................................................ 3

STANDARD OF REVIEW ....................................................................................... 4

LAW AND ARGUMENT ......................................................................................... 4

I.    Plaintiff Has Sufficiently Stated Plausible UTPA Claims Satisfying the Reasonable
      Consumer Standard (COAs 1-5) ....................................................................... 4

      A.    Legal Standard .......................................................................................... 5

      B.    Summary of F&R and Misguided Characterization of Plaintiff's Allegations ................ 6

      C.    Plaintiff has Adequately Alleged the Label is 'Objectively False' ................ 10

            1.    Ninth Circuit caselaw ...................................................................... 11

            2.    Plaintiff's understanding of 'fruit' comports with common understanding ........... 12

                  a.    Dictionary definitions ............................................................ 12

                  b.    Context and qualifying language .......................................... 13

            3.    The F&R improperly relies on a subjective non-commonly understood
                  definition of 'fruit' ............................................................................ 15

                  a.    The F&R's purported common understanding of 'fruit' is at odds
                        with dictionary sources and unsupported by qualifying language
                        and context ............................................................................. 15

                  b.    The F&R improperly relied on non-preemptive federal regulations to
                        surmise the common understanding of 'fruit' .......................... 16

      D.    Alternatively, Plaintiff Adequately Alleged the Label Was 'Likely to
            Mislead a Reasonable Consumer' ............................................................. 18

II.   Plaintiff's Third and Fifth Causes of Action are not Barred by Implied Preemption ........... 19

A.   Legal Standard for Implied Preemption ........................................................20

B.   Plaintiff's Third and Fifth Causes of Action Do Not Seek to Enforce the FDCA .........21

III.  Plaintiff has Stated a Non-Preempted Claim for Breach of Implied Warranty......................22

CONCLUSION......................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                          ***Page***

*Andriesian v. Cosmetic Dermatology, Inc.*,
　　No. 14-1600, 2015 WL 1638729 (D. Or. Mar. 3, 2015)..........................................5, 10, 18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
　　945 F.3d 1225 (9th Cir. 2019) ................................................................................11, 13

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)..............................................................................................5

*Berg v. Popham*,
　　412 F.3d 1122 (9th Cir. 2005) ...............................................................................5

*C.f. 62 Cases of Jam v. United States*,
　　340 U.S. 593 (1951)..............................................................................................9

*Ebner v. Fresh, Inc.*,
　　838 F.3d 958 (9th Cir. 2016) .................................................................................19

*Erickson v. Pardus*,
　　551 U.S. 89 (2007)................................................................................................5

*Freeman v. Time, Inc.*,
　　68 F.3d 285 (9th Cir. 1995) ..............................................................................5, 12, 14

*Garrison v. Whole Foods Mkt. Group, Inc.*,
　　No. 13-5222, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 7, 2014)...........................18

*Guzman v. Polaris Indus.*,
　　No. 19-cv-1543 , 2021 U.S. Dist. LEXIS 98389 (C.D. Cal. May 12, 2021) ....................18

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
　　78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................22

*In re Conagra Foods, Inc.*,
　　90 F. Supp. 3d 919 (C.D. Cal. 2015) .....................................................................17

*Jenkins v. McKeithen*,
　　395 U.S. 411 (1969)..............................................................................................5

*Kang v. P.F. Chang's China Bistro, Inc.*,
　　844 Fed. Appx. 969 (9th Cir. 2021).....................................................................11, 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................4

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .........................................................................5

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
    No. 14-2006, 2015 U.S. Dist. LEXIS 14674 (N.D. Cal. Feb. 5, 2015) ...........................17

*Nguyen v. Cree, Inc.*,
    No. 18-2097, 2019 WL 7879879 (D. Or. Nov. 6, 2019) ....................................6

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88 (Or. 2015) .....................................................................................5

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) .....................................................................20

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ....................................................................6, 19

*Robinson v. American Honda Motor Co., Inc.*,
    551 F.3d 218 (4th Cir. 2009) .......................................................................22

*Scharfstein v. BP West Coast Products, LLC*,
    292 Or. App. 69 (Or. App. 2018) .................................................................21

*Silva v. Unique Beverage Co., LLC ("Silva II")*,
    No. 17-391, 2017 WL 4896097 (D. Or. Oct. 30, 2017) ...........................6, 16, 19

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) .....................................................................20

*Victor v. R.C. Bigelow, Inc.*,
    No. 13-2976, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014) .........................17

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...........................................................5, 6, 12, 16

**Statutes**

21 U.S.C. § 337..........................................................................................................20

28 U.S.C. § 636............................................................................................................4

ORS § 72.3140...........................................................................................................22

ORS §§ 646.608 ..........................................................................................................21

ORS § 646.605, *et seq.* ...............................................................................................21

**Rules**

Fed. R. Civ. P. 9 .........................................................................................................4

Fed. R. Civ. P. 12 ....................................................................................................5, 15

Fed. R. Civ. P. 72 .......................................................................................................4

**Regulations & Guidance Documents**

7 C.F.R. § 205.601 ......................................................................................................9

21 C.F.R. § 101.3 .......................................................................................................21

21 C.F.R. § 101.9 ...............................................................................................8, 18, 21

21 C.F.R. § 101.13 ................................................................................................18, 21

21 C.F.R. § 101.65 .....................................................................................................18

21 C.F.R. § 184.1588 ...................................................................................................9

81 FR 33742 ..............................................................................................................8

81 FR 33835 ............................................................................................................16

## INTRODUCTION

Plaintiff Sarah Vitort ("Plaintiff"), through undersigned counsel, respectfully submits the following objections to the Magistrate Judge's Findings and Recommendation ("F&R"), dated September 13, 2021, ECF No. 24, which recommended dismissal of all of Plaintiff's claims. This Court should decline to adopt the F&R for all the reasons provided herein, as well as those provided in her Opposition to Defendants' Motion to Dismiss, ECF No. 20 ("MTD Opp.), which Plaintiff incorporates herein. In the alternative, Plaintiff should be afforded an opportunity to amend.[1]

## RELEVANT FACTUAL BACKGROUND

This putative class action arises due to Defendants' deceptive efforts to profit from the consumer demand for minimally processed foods that avoid unhealthy added sugars. Plaintiff's Complaint, ECF No. 1 ("Compl."), at ¶¶ 1, 19, 22-24. Consumer awareness of the link between added sugars and various diseases—such as heart disease, diabetes, and weight gain—has greatly increased, spiking demand for products avoiding added sugars and additives. *Id.* ¶¶ 19-21. Indeed, some studies show that over 80 percent of consumers seek to limit sugar in their diet. *Id.* ¶ 22. This growing demand has expanded the market for manufacturers, and allowed them to charge more for such products. *Id.* ¶ 23.

Seeking to capitalize on this market, Defendants labeled and sold Kroger "Just Fruit", a purported "spreadable fruit" product (the "Product"). *Id.* ¶¶ 2, 77. As a retailer, Defendants presumably are aware of other 'jam-like' products that disclose on the front label the addition of added sugars and sweeting agents, yet they chose against making these reasonable disclosures. *Id.* ¶ 77. As the following label illustrates, Defendants represented that the Product contains "just

---

[1] The F&R made no recommendation as to whether amendment should be permitted.

fruit," representing that the Product contains fruit and fruit alone. *See e.g., id.* ¶¶ 3, 25, 26.[2] This

message is reinforced by the Product's further characterization as "spreadable fruit." *Id.* ¶ 27.



Despite its name and front label, the ingredients list reveals that the Product actually

contains significant added sugar, well beyond the sugar occurring naturally in the fruit. *Id.* ¶ 29.

The number one ingredient in the Product is actually sugary fruit syrup, and it further contains

added sugars and/or additives such as "pectin," "calcium citrate," "apple juice concentrate," and

"citric acid." *Id.* ¶¶ 28-29.

Therefore, the claims that the Product is "just fruit" and "spreadable fruit" is objectively

false. *Id.* ¶ 30. At the very least, even if the "just fruit" claim is not objectively false, the Product

name and label was likely to mislead a reasonable consumer into believing the Product was free

from additives and sugar beyond those occurring naturally in fruit.[3] *Id.* ¶¶ 52-53, 55-59, 72, 98,

---

[2] Though Plaintiff's Complaint noted the name of the fruit flavor in connection with the 'Just Fruit' representation, Plaintiff clarified in her Motion to Dismiss Opposition that she does not challenge Defendants' use of the word "Blackberry" to characterize the Product's primary recognizable flavor. MTD Opp. at 28-29; *see also* F&R at 14, fn. 4 (no need to address Defendants' "primary recognizable flavor" preemption argument as Plaintiff is not challenging same).

[3] The distinction between whether Plaintiff is pleading 'objectively false' claims or 'technically true but misleading to a reasonable consumer' claims is somewhat illusory, as it simply turns on

128. As the Complaint explains, "[i]t is axiomatic that Defendants knew that by naming the Product 'Just Fruit', that there was a likelihood that reasonable consumers would confuse or misunderstand that the source of the Product was namely that: just fruit, and that the Product would be free of added sugars." *Id.* ¶ 58. "Defendants intended to cause confusion as to the source of the Product being 'just fruit,' as Defendants…were aware…of the market for lesser processed, more natural products without added sugars[.]" *Id.* ¶ 59.

## RELEVANT PROCEDURAL BACKGROUND

In her complaint, Plaintiff alleged violations of Oregon's Unlawful Trade Practices Act, ORS §§ 646.605, et seq. ("UTPA") and breach of implied warranty of merchantability, ORS § 72.3140. *Id*. ¶¶ 45-170.[4] On November 5, 2020, Defendants filed their Motion to Dismiss, ECF No. 16 ("Def. MTD"). Therein, Defendants sought dismissal under Rule 12(b)(6) for failure to adequately allege: violations under the 'reasonable consumer' standard (Counts 1-6), ascertainable loss and causation (Counts 1-5), and breach of warranty (Count 6). Def. MTD at 6-14. Defendants further sought dismissal under Rule 9(b) (for all claims) and under a 'group pleading' theory with respect to Defendant Fred Meyer. *Id.* at 23-27. Defendants additionally argued Plaintiff's claims were preempted under theories of express preemption (Counts 1-6) and implied preemption (Counts 3 and 5). Plaintiff's Opposition Memorandum and Defendants' Reply Memorandum were filed on January 6, 2021 and February 3, 2021, respectively.

On September 13, 2021, the Magistrate Judge issued Findings and Recommendations. The F&R recommends dismissal on three grounds. First, Plaintiff's UTPA claims (Nos. 1-5) should be

---

the parties' differing definitions (i.e., understandings) of 'fruit' as inclusive of the extra ingredients at issue or not.

[4] Plaintiff's causes of action were organized by UTPA sub-sections and further broken out by the particular ascertainable loss theory at issue. *See* MTD Opp. at 3-5 (explaining loss theory associated with each cause of action).

dismissed under Rule 12(b)(6) for failing to sufficiently allege an unlawful trade practice. F&R at 5-14. Second, two of Plaintiff's UTPA claims (Nos. 3 and 5) and Plaintiff's implied warranty claim (No. 6) are impliedly preempted. *Id.* at 14-17. Third, Plaintiff's implied warranty claim (No. 6) is additionally dismissed for failing the reasonable consumer standard. *Id.* at 16.[5]

    Plaintiff objects to the F&R in its entirety. In addition to the objections and argument stated herein, Plaintiff incorporates her response to the motion to dismiss including all of the arguments set forth in that response.

## STANDARD OF REVIEW

    When a party objects to any portion of a Magistrate Judge's findings and recommendations, the district court must review de novo the portions of the findings and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C); FRCP 72(b)(3).

## LAW AND ARGUMENT

## I.  Plaintiff Has Sufficiently Stated Plausible UTPA Claims Satisfying the Reasonable Consumer Standard (COAs 1-5)

---

[5] In a footnote, the F&R dismissed all claims against the "Doe defendants" since Plaintiff "has had over a year…to discover the names of the Doe defendants and has not amended the Complaint to add them." F&R at 2, n. 1. Here, Defendants also sought to dismiss Plaintiff's claims under Rule 9(b), and Plaintiff did not request a Rule 26 discovery conference, as the initial case management order imposed a bilateral obligation on "all counsel [to] confer as required by [Rule] 26(f) within 30 days after a defendant files a responsive pleading or a motion under [Rule] 12." ECF No. 2 at 1. Since a Rule 9 motion contends a complaint is "specific enough to give defendants notice of the particular misconduct...so that they can defend against the charge[,]" it follows a defendant would not be able to adequately engage in discovery without understanding the charges against it. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Defendants also did not seek a Rule 26(f) conference, and no discovery has been exchanged. Given the F&R's implication that discovery has indeed commenced (which admittedly has support in the 'discovery and pretrial deadlines' portion of the pretrial scheduling order that is not contingent upon a Rule 26 conference), the parties are in discussion regarding the possibility of seeking relief from the pretrial scheduling order. Plaintiff does not object to staying discovery pending resolution of the motion to dismiss for the reasons stated herein. This matter will be brought before the Magistrate Judge once the parties have come to an agreement on how to proceed.

### A.    Legal Standard

When considering a Rule 12(b)(6) dismissal testing the legal sufficiency of the complaint, the factual allegations in the complaint are assumed true and all reasonable inferences arising therefrom are construed in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations omitted). At this stage of the proceedings, all that is required of Plaintiff is that the Complaint "nudge[s] his claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a claim under UTPA, a plaintiff must allege, *inter alia*, that "the defendant committed an unlawful trade practice[.]" *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (Or. 2015).[6] Where stating an UTPA claim based on labeling, "[the] plaintiff must affirmatively plead and prove that the statements at issue are either objectively false or at least likely to mislead a reasonable consumer." *Andriesian v. Cosmetic Dermatology, Inc.*, No. 14-1600, 2015 WL 1638729, at *9 (D. Or. Mar. 3, 2015); *see also Pearson*, 358 Or. at 361 (whether a product's label is a misrepresentation under the UTPA "is determined based on an objective standard of what a reasonable consumer would understand the representation to be[.]"). Stated differently, a plaintiff must "'show that members of the public are likely to be deceived'" and the "'claim must be evaluated from the vantage of a reasonable consumer.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Further,

---

[6] The other components of an UTPA claim (such as reliance and causation) were not the subject of the F&R.

"[c]ases suggest that it is appropriate to consider the entirety of a label in ascertaining whether a reasonable consumer would find a product deceptive or misleading" *Silva v. Unique Beverage Co*., No. 17-391, 2017 WL 48960097, at *3 (D. Or. Oct. 30, 2017) ("*Silva II*") (collecting cases). However, "misleading label information on the front of a product cannot be corrected by an ingredient list." *Id*. at *4 (citing *Williams*, 552 F.3d at 939).

Courts in the Ninth Circuit recognize that "whether a product's labels are deceptive [to a reasonable consumer]…is [generally] a question of fact for the jury"—not the court. *Silva II* at *4-5 (citing *Williams*, 552 F.3d at 938-39); *Nguyen v. Cree, Inc.*, No. 18-2097, 2019 WL 7879879, at *8 (D. Or. Nov. 6, 2019) (same). "Courts have, however, dismissed claims alleging violations of consumer protection statutes at the pleading stage where it is clear 'no reasonable juror could conclude that the product's label was not deceptive or misleading.'" F&R at 8 (quoting *Silva II* at *3) (collecting cases). But as the Ninth Circuit emphasized, "the reasonable consumer standard…raises questions of fact that are appropriate for resolution on a motion to dismiss ***only in 'rare situations.'***" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *Williams*, 552 F.3d at 938) (emphasis added).

### B.    Summary of F&R and Misguided Characterization of Plaintiff's Allegations

The F&R found that Plaintiff "fails to state a plausible claim [under UTPA and breach of warranty] because the Product's label was not false and would not mislead a reasonable consumer." F&R at 2. Critical to this Court's analysis is not merely the legal reasoning behind the F&R, but also its characterizations of Plaintiff's Complaint and Motion to Dismiss briefing, all of which Plaintiff respectfully suggests are flawed.

In reaching this conclusion, the F&R summarized its reasoning process as follows:

> The term "Just Fruit" displayed prominently on the Product label would lead most consumers to conclude the Product contains only fruit products. Moreover, the term "Spreadable Fruit" on the Product

> label implies the fruit contained in the Product is in a form that is capable of being spread. In this context, "spread" is defined as "to distribute over an area" or to "apply on a surface." Consequently, as long as the Product contains only fruit products in a form that can be distributed over an area or applied on a surface, the label would not be inherently misleading or confusing to a reasonable consumer.

F&R at 8 (quoting Merriam-Webster Dictionary definition of "spread").

Notably, while the F&R initially (and correctly) summarized Plaintiff's claims as "based on the presence of added sugars and altered fruit ingredients in the Product[,]" (*id.* at 5) it now seemingly recharacterized Plaintiff's claims—from claiming the Product was not "just fruit"—to claiming the Product was not 'just fruit products' This happens numerous times in the F&R. *See, e.g.,* F&R at 11 ("her claims are based on an assumption the added sugars in the Product do not **derive from** fruit sources") (emphasis added). This, of course, is *not* the basis of Plaintiff's allegations. Further, while utilizing the dictionary to posit a reasonable consumer's understanding of "spread," it did *not* do so for fruit, but rather assumed *ipse dixit* that "fruit" and "fruit products" were interchangeable.

The F&R also turns on another overarching (and flawed) characterization of Plaintiff's claims; namely, that they rely *solely* on whether the 'just fruit' claim is objectively true. But as described herein (pp. 18-19), Plaintiff further alleged that, in the alternative, the Product label would mislead a reasonable consumer into believing the Product was free from additives and sugar beyond those occurring naturally in fruit.

The F&R then separately addresses whether "fruit syrup" and "pectin" are "fruit." F&R at 9-12. Notably, the F&R did *not* analyze whether calcium citrate, apple juice concentrate, and citric acid fall under a consumer's understanding of 'fruit.'[7]

---

[7] Rather, it seems to characterize Plaintiff's allegations with respect to these ingredients as focusing solely only whether they are 'spreadable' or not. *See* F&R at 12-13. But this is not the case. Plaintiff's elaboration of the pectin and fruit syrup manufacturing process were exemplars.

Regarding fruit syrup, the F&R states that Plaintiff's "support" for the argument that "fruit syrup" is not "fruit" but rather "added sugar" are two U.S. custom court cases, but does not acknowledge the two dictionary definitions of "syrup" cited by Plaintiff. *Compare* F&R at 9 to MTD Opp. at 8-9. The F&R then draws on FDA regulations and comments supporting recent amendments which purportedly "make clear the FDA recognizes added sugars in fruit syrups may be derived solely from fruit sources." F&R at 9-10 (citing 21 C.F.R. 101.9(c)(6)(iii); 81 FR 33742-01).[8] One FDA comment quoted by the F&R even distinguished "whole fruit [and] fruit pieces…that maintain the basic properties of a fruit" from "fruit syrups" which are processed to be "stripped of nutrients such that they are essentially sugars that provide a concentrated source of calories to a food without other redeeming qualities[.]" F&R at 10-11 (quoting 81 FR 33835). The F&R concludes its 'fruit syrup' analysis as follows:

> [I]n light in of the FDA's clear statement that added sugars in fruit syrups can come from processed fruit or fruit juice, Defendants' representation of the Product as "Just Fruit" is not inherently false or misleading. Consequently, the labeling of the Product does not inherently cause a likelihood of confusion or misunderstanding with respect to the added sugars in the Product.

F&R at 11. Thus, following the F&R reasoning, the F&R impliedly concludes, as a matter of law, *inter alia* that no reasonable juror could conclude that "Just Fruit" would exclude ingredients that

---

*See* MTD Op.. at 8 ("'fruit syrup,' *for example*, is not 'just fruit') (emphasis added). These 'examples' were obviously not meant to exclude calcium citrate, apple juice concentrate, and citric acid for the 'fruit or not fruit' debate. The F&R even acknowledges this earlier in the opinion, noting the Complaint alleges "large amounts of sugars and other additives such as `pectin,' calcium citrate, 'apple juice concentrate,' and 'citric acid' [in the Product]—, making 'demonstrably false' Defendants' just fruit' claim." F&R at 9 (quoting Compl. at ¶¶ 28, 30). *See also* MTD Opp. at 8 ("'calcium citrate,' 'apple juice concentrate,' and 'citric acid'…cannot be characterized as 'just fruit'").

[8] The F&R also makes what is arguably a finding of fact outside the pleadings; namely that "the added sugars in the fruit syrup found in the Product are just as likely to be from processed fruit as other sugar sources." F&R at 11.

(according the F&R's own cited materials) do not even 'maintain the basic properties of a fruit.'

Next, the F&R analyzes pectin, citing two sources (cited by neither party) to characterize pectin as an altered form of natural fruit. *Id.* at 11-12.[9] The F&R does not address the Supreme Court decision cited by Plaintiff finding, *inter alia*, that a jam product that substituted fruit with pectin was properly labeled "imitation jam". MTD Opp. at 9 (quoting *C.f. 62 Cases of Jam v. United States*, 340 U.S. 593, 595, 600 (1951)). The F&R then characterizes Plaintiff's argument that the artificial process and synthetic substance involved in pectin's extraction process render it 'distinct from naturally occurring fruit.' F&R at 11-12. While this is accurate, Plaintiff also clearly stated—in both her Complaint and briefing—that "'pectin'…cannot be characterized as actual fruit.'" MTD Opp. at 9; *see also* Compl. at ¶¶ 3, 28, 166.

The F&R makes three points in its pectin analysis. First, it concludes that "the term 'Just Fruit' does not equate to only 'naturally occurring fruit[,]'" though it offers no support for the proposition that no reasonable consumer might understand it that way. F&R at 12. Second, it analogizes the artificial process in which pectin is made[10] to the everyday process of making fruit juice or applesauce; implying that consumers would consider 'pectin' to be fruit in the same way applesauce is fruit. *Id.* Finally, the F&R notes Plaintiff failed to allege the synthetic chemicals used in the pectin manufacturing process were still present in the Product. *Id.*

---

[9] Namely, the F&R relies on a WebMD article authored by a journalist without a medical background and an obscure online dictionary (YourDictionary.com). F&R at 11 (citing M. McMillen, *Pectin*, https://www.webmd.com/vitamins-and-supplements/pectin-uses-and-risks and www.yourdictionary.com/pectin); *see also WebMD Biography: Matt McMillen*, avail. at https://www.webmd.com/matt-mcmillen. A Westlaw search of federal court decisions in this Circuit citing "yourdictionary.com" yielded no results.

[10] As noted by Plaintiff, pectin is "'produced commercially by extracting citrus peel, apple pomace, or beet pulp with hot dilute acid' [whereby] '[t]he extract is filtered, and pectin is then precipitated from the clear extract with ethanol or isopropanol', both of which are classified as 'synthetic substances' under 7 C.F.R. § 205.601(a)(1)." MTD Opp. at 9 (also quoting 21 C.F.R. § 184.1588).

Next, the F&R addresses what it purports to be Plaintiff's argument that "'the phrase `spreadable fruit' would appear to exclude the other fruit extractions, specifically calcium citrate,— apple juice concentrate, and citric acid." F&R at 12 (quoting MTD Opp. at 12). However, as noted above (fn. 7), Plaintiff's claim with respect to these ingredients is primarily that they are not 'fruit', not merely that they are not 'spreadable.' Rather, 'spreadable fruit' was described in the Complaint as qualifying language that would further reinforce consumers' belief that the Product was 'just fruit.' *See* Compl. at ¶¶ 26-27 ("Defendants advertised and marketed the Product as comprising 'just fruit' [and] [t]he front label further describes the product as 'spreadable fruit', further reinforcing the message that the Product was just that"). Relying on this misguided characterization of Plaintiff's claim, the F&R concludes that because the Product itself is spreadable, the claim is not false or misleading to a reasonable consumer. F&R at 13.

As explained below, the F&R both misreads Plaintiff's claims and engages in analysis contrary to that established by the Ninth Circuit. Plaintiff has adequately alleged that the label is 'objectively false' and that a reasonable consumer—regardless of whether the label is 'objectively false' or not—would be misled into believing the Product was free of the types of added sugars and other ingredients that comprise the majority of Defendants' Product.

### C.    Plaintiff has Adequately Alleged the Label is 'Objectively False'

Here, Plaintiff has plausibly and "affirmatively ple[d]…that the statements at issue are …objectively false." *Andriesian*, 2015 WL 1638729, at *9. The F&R, in reaching its contrary conclusion that the label was "not inherently false or misleading," relied entirely on a definition of 'fruit' that did not represent a common understanding. Nor did it consider the context and qualifying language of 'just' and 'spreadable fruit.' In so doing, it departed from established precedent as to how courts should interpret the meaning of words in unfair trade practices cases.

### 1.    Ninth Circuit caselaw

When assessing the truth or falsity of a statement (as well as how consumers might interpret same), courts including the Ninth Circuit routinely refer to dictionary definitions. *See, e.g., Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (analyzing definitions of "diet" from Merriam-Webster, American Heritage, Cambridge, and Collins Dictionaries). With those definitions, along with how the term is used in the specific instance, courts can determine "the common understanding of the word[.]" *Id.* (finding adjective, not noun, definition of "diet" applied to "Diet Dr. Pepper").

As the Ninth Circuit recently illustrated, there is a high bar for finding a plaintiff's proposed definition of an allegedly misleading term is 'implausible on its face' so as to warrant dismissal. In *Kang*, the district court dismissed plaintiff's UCL claim that reasonable consumers were likely deceived by a restaurant menu's (intentionally mis-spelled) "krab mix" into believing the product contained real crab (notably, the menu utilized "crab" when real crab was used). *Kang v. P.F. Chang's China Bistro, Inc.*, 844 Fed. Appx. 969, 970 (9th Cir. 2021). The Court reversed, stating:

> As we observed in *Williams*, determining whether reasonable consumers are likely to be deceived "will usually be a question of fact not appropriate for decision on" a motion to dismiss. *Id.* That is the case here. Kang alleges that defendant's inclusion of the term "krab mix" in the ingredient list for certain of its sushi rolls is likely to deceive reasonable consumers into thinking that the sushi rolls contain at least some real crab meat when in fact they contain none. That allegation ultimately may not be borne out by the evidence, but it is at least plausible that reasonable consumers would be deceived in this way. We certainly agree with defendant that reasonable consumers confronted with the fanciful spelling of "krab" on the menu would not assume they were purchasing a sushi roll with 100% real crab meat. But the menu uses the term "krab mix," and Kang's allegation is that reasonable consumers would understand that term to mean the item contains a mixture of imitation and real crab. Because the term "krab mix" lacks any commonly understood contrary meaning, we cannot say, in the absence of evidence bearing on the issue, that Kang's allegation is implausible on its face.

*Id.* at 970-971 (quoting *Williams*, 552 F.3d at 938). Further, the Court found that the use of "crab" elsewhere on the menu did not represent "'qualifying language' that dispelled the alleged deception…and even if it did, that language does not appear immediately next to the representation that it purportedly qualifies." *Id.* at 972 (citing *Freeman*, 68 F.3d 285).[11]

### 2. Plaintiff's understanding of 'fruit' comports with common understanding

Plaintiff's understanding of fruit corresponds with the common understanding of the term. This is supported by dictionary definitions, market and label context, and qualifying language. At the very least, it cannot be said that Plaintiff's understanding is so 'implausible on its face' to warrant dismissal at this time.

### a. Dictionary definitions

There is more than ample support in the dictionary whereby Plaintiff's understanding of 'fruit'—which would not encompass added sugars and the other ingredients at issue (despite possibly being derived from fruit using a process not occurring in nature)—plausibly represents the common understanding of the term. Attached hereto as Exhibits A-D are dictionary entries from the four dictionaries relied on in the Ninth Circuit's *Kang* decision. Each dictionary contains a 'common understanding' definition of 'fruit' in line with that of Plaintiff:

- "the usually edible reproductive body of a seed plant" (Ex. A, Merriam-Webster Dict.);

- "[a]n edible, usually sweet and fleshy form of…[t]he ripened ovary or ovaries of a seed-bearing plant" (Ex. B, American Heritage Dict.);

- "things such as apples or oranges that grow on a tree or a bush,

---

[11] Notably, one of Plaintiff's UTPA claims allege that Defendants' use of "Just" additionally violates FDCA regulations since it is an 'implied nutrient content claim' triggering additional disclose requirements that Defendants failed to meet. Compl. at ¶¶ 94-104; *see also* MTD Opp. at 3, n. 3.

contain seeds, and can be eaten as food" (Ex. C, Cambridge Essential American English Dictionary); and

- "something which grows on a tree or bush and which contains seeds or a pit covered by a substance that you can eat" (Ex. D, Collins Dictionary).

Further, these are not definitions 'cherry-picked' for the purposes of this memorandum. Rather, compared to the other definitions of 'fruit,' these entries are the definitions specifically relating to *edible* products, which is clearly the case here.

A plain reading of these definitions would not encompass the added sugars and other ingredients at issue here. None of these definitions of 'fruit' include language akin to "…all chemicals and substances possibly derived from same." None of the ingredients, which again refer to *additives* which are extracted and isolated from actual fruit and take on a syrup or powder form that does not exist in nature, can be described as the "body of a seed plant" in an "edible…fleshy form" which "grow on a tree or bush." While it is true that the Product's fruit is in a spreadable form (and thus does not take the form it exists on a tree), this is made clear to the consumer with the qualifier "spreadable fruit." It is possible to change the *form* of fruit without additives (by crushing it, for example), which is exactly what "Just [Spreadable] Fruit" entails.

Dictionary sources provide more-than-plausible (if not conclusive) evidence that Plaintiff's understanding of 'fruit' represents the common understanding of the term. As explained below, this understanding is underscored by context and qualifying language.

### b.    Context and qualifying language

Plaintiff's concept of fruit is further supported by the context and qualifying language. With respect to context, the Ninth Circuit looks to the marketplace in which the product exists to assess whether a plaintiff's interpretation is reasonable. *See, e.g., Becerra*, 945 F.3d at 1229-30 ("[d]iet soft drinks are common in the marketplace and the prevalent understanding of the term in

that context is that the 'diet' version of a soft drink has fewer calories than its 'regular' counterpart"). Here, Plaintiff has alleged both consumer market preferences for products without added sugar and other sugar-based 'jam-like' products that use descriptive terms identifying the presence of added sugars. Defendants' Product is named in such a way that 'distinguishes' it in consumers' minds as different from those other products, when in fact that is not the case.

Plaintiff's definition of fruit as excluding the added sugars and additives at issue is further underscored by key qualifying language; the word "Just" and "spreadable fruit." Consumers are not just getting fruit, but they are getting "just" fruit—which Defendants are clearly marketing as a benefit of their product. Given other sugar-based products on the market and consumers' desire to avoid same, it is more than plausible that consumers would interpret "Just" as meaning the exclusion of 'unwanted items' that other products in the market contain; namely, added sugar. At the very least, "Just" would mean the exclusion of all items that do not fall within the aforementioned definitions of 'fruit.'

"Spreadable fruit" is another instance of qualifying language further underscoring Plaintiff's argument that the 'common understanding' of "Just Fruit" would exclude added sugars and ingredients at issue. Instead of referring to their product in the traditional sense (as a 'jam' or 'jelly' consumers associate with added sugar), Defendants utilize a unique identifier: "spreadable fruit." This again reinforces the notion in consumers that this Product, unlike others in the market, is unique in its relative purity and absence of unwanted added sugars.

Further, the phrases "Just" and "Spreadable Fruit" appear on the front label as part of the product name or directly below it. Thus, unlike the ingredients list on the back label, these phrases are considered qualifying language, further underscoring the deception likely to harm reasonable consumers. *See Kang*, 844 Fed. Appx. At 972; *Freeman*, 68 F.3d at 289-90.

### 3.    The F&R improperly relies on a subjective non-commonly understood definition of 'fruit'

As noted above, Plaintiff has satisfied Rule 12(b)(6)'s reasonable consumer standard, and 'weighing' her understanding or definition of 'fruit' against that espoused in the F&R is not proper. This question should be submitted to the jury. However, it is worth noting that the F&R's definition of 'fruit' is both wrong and resulted from analysis at odds with Ninth Circuit guidance. The F&R utilizes a non-common understanding of 'fruit' and other terms that (a) have little support in the dictionary (b) ignore qualifying language and context; (c) were improperly derived (and indirectly at that) from obscure (to a consumer) federal regulations (which themselves elsewhere strengthen Plaintiff's case).

### a.    The F&R's purported common understanding of 'fruit' is at odds with dictionary sources and unsupported by qualifying language and context

Unlike the Plaintiff's understanding of "Just Fruit", the F&R's usage of fruit has no support in dictionary sources. Tellingly, while the F&R cites dictionary sources for the common understanding of 'spreadable' (F&R at 8), it avoids analyzing those same sources to arrive at a common understanding of 'fruit.' If it were to have done so, it would find that the only *possible* applicable definitions of 'fruit' would not apply in the context of an edible food product.[12] Rather, the Court simply assumes an expansive definition of fruit on behalf of all reasonable consumers that includes any possible derivative substance, even those that do not "maintain the basic

---

[12] The definitions of fruit which would *possibly* encompass the ingredients in the form they are added to the Product are not made with reference to fruit in its edible, non-vegetable food-item sense. *See, e.g.,* Ex. A ("a product of plant growth (such as grain, vegetables, or cotton"), Ex. B ("[a] plant crop or product"), Ex. D ("any product of plant growth useful to humans or animals"). Defendants may point to one definition ("[a] part or an amount of such a plant product, served as food: *fruit for dessert*") (Ex. B), but even if the ingredients were "part" of a plant product, this definition clearly refers to a portion of actual fruit, which can be served alone as food.  This would not apply to the ingredients at issue.

properties of a fruit." F&R at 10 (quoting 81 FR 33835).

Further, the F&R's repeated assumed equivalency between 'fruit' and 'substances derived from fruit' has no dictionary support. They are, by definition, distinct from one another.

Also, as explained above, the F&R's 'applesauce analogy' is misguided. F&R at 12; *see also supra*, p. 13.  A fruit without additives can be made 'spreadable' and still consist of 'just fruit' as the Plaintiff and reasonable consumers understand it. Homemade applesauce can be 'just fruit' in a spreadable form; while applesauce with added sugars, pectin and other ingredients may still be applesauce, but it is not 'just fruit.'

As noted above, the F&R's analysis failed to consider the market context and the qualifying language when assessing how consumers may interpret the label as a whole, contrary to the Ninth Circuit's guidance. *See Williams, ibid; see also Silva II* at *3 ("[c]ases suggest that it is appropriate to consider the entirety of a label in ascertaining whether a reasonable consumer would find a product deceptive or misleading"). And if this Court were to do so, it will find (as Plaintiff explains above) that the market context (competing products and consumer avoidance of added sugars), as well as the qualifying language (particularly 'Just') further lend credence to the common understanding of "Just Fruit" advanced by Plaintiff. *See supra*, pp. 13-14.

Plaintiff has easily met her burden with respect to what reasonable consumers might understand by "Just Fruit." And though it would be improper for the Court at this time to act as 'fact-finder' between competing definitions, even if it did it would find that the Plaintiff's definition is far more compatible with the common understanding that the unsupported definition supplied by the F&R.

> **b.    The F&R improperly relied on non-preemptive federal regulations to surmise the common understanding of 'fruit'**

The F&R improperly relied on FDCA regulations to establish the common understanding

of fruit. For example, citing various FDA regulations, the F&R concludes that fruit syrups contain added sugar which can derive from processed fruits or fruit juices—thus suggesting that the "just fruit" representation is not objectively false. F&R at 9-11. However, FDCA regulations are not representative of how consumers understand words. Courts have routinely found that the reasonable consumer standard is not necessarily determined by FDCA regulations. Indeed, "the ultimate question in…[consumer] fraud claims is what a reasonable consumer expects, **which may have absolutely no relation to FDA regulations**." *Victor v. R.C. Bigelow, Inc*., No. 13-2976, 2014 U.S. Dist. LEXIS 34550, at *58 (N.D. Cal. Mar. 14, 2014) (emphasis added).

Illustrative on this point is *In re ConAgra Foods, Inc*., where the plaintiff alleged defendant deceptively and misleadingly marketed its cooking oil, made from genetically-modified organisms, as "100% Natural." 90 F. Supp. 3d 919 (C.D. Cal. 2015). The defendant argued the FDA has refused to designate genetically engineered foods and food ingredients non-natural and has concluded that the presence of GMOs is not a "material fact" that must be disclosed under FDA regulations. *Id.* at 1020. However, the court found that "the relevant question…is whether a reasonable consumer would have understood the term in that manner and found it material to his or her purchasing decision. It is not how the FDA views genetically engineered foods." *Id.*

Similarly, in *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, the court rejected the defendant's argument that a reasonable consumer could not be misled by its "all natural" claims, despite its products containing Sodium Acid Pyrophosphate ('SAPP'), because the "USDA regulations allow food manufacturers to include SAPP in products which are labeled 'organic.'" No. 14-2006, 2015 U.S. Dist. LEXIS 14674, at *20 (N.D. Cal. Feb. 5, 2015). The court found that "there is no evidence in the record that reasonable consumers are even aware of the USDA regulations regarding the definition of the term 'organic,' let alone that these consumers assume

that definition applies to 'natural' foods as well." *Id.* (*citing Garrison v. Whole Foods Mkt. Group, Inc.*, No. 13-5222, 2014 U.S. Dist. LEXIS 75271, at *9-10 (N.D. Cal. June 7, 2014)) (quotations omitted).

In short, "[t]he 'reasonable consumer' standard does not require consumers to be lawyers with an encyclopedic knowledge of statutes and regulations to rely on warning labels." *Guzman v. Polaris Indus.*, No. 19-cv-1543, 2021 U.S. Dist. LEXIS 98389, at *20 (C.D. Cal. May 12, 2021). Despite the FDA's interpretation of what ingredients are fruit-derived or otherwise fruit, the reasonable consumer may have a different and independent understanding that should be recognized under Plaintiff's UTPA claims. In any event, the FDA *did not expressly define fruit* in the regulations cited by the F&R.[13]

### D.    Alternatively, Plaintiff Adequately Alleged the Label Was 'Likely to Mislead a Reasonable Consumer'

Alternatively, even if Plaintiff failed to adequately allege statements that were objectively false, she has pled that the label was "at least likely to mislead a reasonable consumer." *Andriesian*, 2015 WL 1638729, at *9. Thus, even the Court were to find that the definition of 'fruit' relied on by the F&R was objectively true, as opposed to the Plaintiff's definition of 'fruit,' Plaintiff is plainly alleging that the label nevertheless misled her into believing the Product conformed with

---

[13] Notably, the F&R does address other FDCA regulation provisions raised by Plaintiff that actually *support* Plaintiff's assertion that reasonable consumers may be misled by the Product's label. Specifically, Plaintiff alleges that 'added sugars' are considered a nutrient in the FDCA's regulations, and "[b]y describing the Product as 'Just Fruit,' Defendants are '[d]escrib[ing] the food or an ingredient therein in a manner that suggests that [Added Sugars are] absent'…[or making a] '[c]laim about the food or an ingredient therein that suggest that…[fruit] is…present in a certain amount,'…rendering 'Just Fruit' an 'implied nutrient content claim' under [the regulations.]" *Id.* ¶¶ 94-95 (quoting 21 C.F.R. §§ 101.9(c)(6)(iii), 101.13(b)(2), 101.65(c)(1)). This 'implied nutrient content claim' triggers the disclosure of a 'statement of identity' to better inform consumers, which Defendants failed to provide. *Id.* ¶¶ 96-102. Thus, even the regulations themselves—which again are inapposite with respect to a reasonable consumer's understanding— lend credence to Plaintiff's argument that "Just" is misleading.

her understanding of 'fruit.' *See supra* pp. 12-14; *see also* Compl. at ¶¶ 52-53, 55-59, 72, 98, 128.

At the core of Plaintiff's allegations was that the label misleads reasonable consumers into believing that the Product would not have added sugar, much less as the primary ingredient. *Id.* ¶¶ 1, 19, 22-24, 28-29. Whether the "Just Fruit" claim is objectively true or not does not absolve Defendants of liability if reasonable consumers would be deceived by the label.

Plaintiff has established "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016). To this end, Plaintiff respectfully refers the Court to its previous arguments with respect to the label as a whole, the dictionary definitions of fruit, the market context (consumers want to avoid added sugar), other lawsuits over similarly misleading language, and the qualifying language ("Just" and "Spreadable Fruit"). At the very least, this is hardly one of the "rare situations" where "no reasonable juror could conclude that the product's label was not deceptive or misleading." *Reid*, 780 F.3d at 958; *Silva II* at *3.

Therefore, even if Plaintiff has not adequately alleged an 'objectively false' statement, she has easily shown how the representations at issue would likely deceive a reasonable consumer. This is borne out by the Complaint's assertion that the Product does not contain fruit as consumers understand it. In the further alternative, Plaintiff seeks leave to amend her complaint to further highlight how a reasonable consumer might be deceived by the label even if the label is not 'objectively false' in its "Just Fruit" claim.

## II.    Plaintiff's Third and Fifth Causes of Action are not Barred by Implied Preemption

The F&R does not recommend dismissal of Plaintiff's claims on express preemption grounds. ECF No. 24 at 14, n. 6. Rather, it appears that the F&R contends that *because the UTPA claims should be dismissed on Rule 12 grounds*, the only 'remaining claims' for the third and fifth causes of action would rely *solely* on FDCA regulations. This analysis is superfluous because

dismissal of those claims on Rule 12 grounds would obviate the need to reach preemption, and Plaintiff does not dispute that her UTPA claims in that instance would be 'converted' into claims asserting a private right of action under FDCA regulations.

However, even if the Court were to analyze whether Plaintiff's third and fifth causes of action are preempted in a vacuum, it will find that Plaintiff is *not* seeking to enforce the express terms of the FDCA. That is a misreading of the Complaint. Although the third and fifth causes of action allege Defendants' conduct violates certain FDA regulations, Plaintiff is not suing on that basis alone. Plaintiff's claims arise from state-made duties under UTPA which merely coincide with federal regulatory requirements. The only reason Plaintiff cites to Defendants' FDCA violations is to demonstrate she suffered an ascertainable loss. Plaintiff's citations to FDCA regulations are made to demonstrate one of Plaintiff's ascertainable loss theories: prohibited transaction.

### A.    Legal Standard for Implied Preemption

The doctrine of implied preemption arises from Section 337(a) of the FDCA, which provides that all proceedings "for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Courts have construed this provision to bar private enforcement of the FDCA or state-law claims that exist solely by virtue of the FDCA. *See Perez v. Nidek Co*., 711 F.3d 1109, 1119-20 (9th Cir. 2013). To survive an implied preemption challenge, "[t]he plaintiff must be suing for conduct that *violates* the FDCA . . . , but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)". *Id.* at 1120 (internal quotation marks and citation omitted). Claims based solely on a violation of the FDCA rather than on state law are impliedly preempted. *Stengel v. Medtronic Inc*., 704 F.3d 1224, 1232 (9th Cir. 2013).

**B.    Plaintiff's Third and Fifth Causes of Action Do Not Seek to Enforce the FDCA**

Although Plaintiff's third and fifth causes of action discuss Defendants' violations of the FDCA, they assert violations of independent legal duties. Plaintiff's third cause of action alleges that Defendants failed to disclose information relating to the characteristics, ingredients, quantities, qualities, and/or standard of the Product—specifically, that it contains more than "just fruit." *See* ECF No. 1 at ¶¶ 90-91 (referencing ORS §§ 646.608(1)(e) and (1)(g)). Plaintiff's fifth cause of action alleges Defendants, concurrent with the tender or delivery of goods, failed to disclose a known material defect and/or nonconformity—again, that it contains more than "just fruit." *Id.* at ¶¶ 141-44 (referencing ORS § 646.608(1)(t)). Both causes of action allege violations of various federal labeling laws (e.g., 21 CFR § 101.13(f), 21 C.F.R. § 101.9(b)(12)(ii), 21 C.F.R. § 101.3(e)), but the reason is not to enforce those laws, but rather, to support Plaintiff's claim that she suffered an ascertainable loss.

Under the 'prohibited transaction' theory, an ascertainable loss occurs where a plaintiff is charged money in a transaction rendered illegal by a defendant's failure to disclose legally required information "in the particular way the law requires." *Scharfstein v. BP West Coast Products, LLC*, 292 Or. App. 69, 88-90 (Or. App. 2018) (*review denied*, 363 Or. 815). The ascertainable loss is the amount collected from the plaintiff in the prohibited transaction. *Id*. Defendants' failure to make disclosures required under the FDCA renders the entire sale of the Product a prohibited transaction, resulting in the prohibited collection of monies from Plaintiff. *Id*. Plaintiff's allegations as to Defendants' FDCA violations are critical to establishing a viable loss theory satisfying the ascertainable loss requirement. They are not however intended to be the sole basis for Plaintiff's third and fifth causes of action, which assert independent UTPA claims. In short, these claims are not impliedly preempted.

**III.    Plaintiff has Stated a Non-Preempted Claim for Breach of Implied Warranty**

Finally, the F&R recommends dismissal of Plaintiff's ORS § 72.3140 implied warranty of merchantability claims. F&R at 16-17. To state a claim for breach of the implied warranty, the plaintiff must allege the product was not merchantable upon purchase, an element that "necessarily incorporates…the consumer's reasonable expectations." *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015) (quoting *Robinson v. American Honda Motor Co., Inc*., 551 F.3d 218 (4th Cir. 2009) (internal quotations omitted).

Here, Plaintiff alleges Defendants breached the warranty by: (a) providing a product that did not conform to the promises or affirmations of fact made on the container or label or, alternatively, by (b) failing to provide a product labeled in accordance with federal labeling laws. Compl. ¶¶ 166-167. The F&R incorporated its 'reasonable consumer standard' reasoning with respect to the first putative breach and its preemption argument with respect to the second. Accordingly, Plaintiff respectfully refers the Court to her arguments in Sections I and II, *supra*.

## CONCLUSION

For all of the aforementioned reasons, the F&R should be overruled in its entirety. Alternatively, in the event this Court finds Plaintiff's allegations are insufficient, Plaintiff seeks leave to amend her Complaint.

October 14, 2021                           Respectfully submitted,

                                           **PIUCCI LAW, LLC**


                                 By:  <u>/s/ Joe Piucci</u>
                                      Joe Piucci (OSB # 135325)
                                      joe@piucci.com
                                      Stephen Piucci (OSB # 821056)
                                      steve@piucci.com
                                      900 SW 13th, Suite 200
                                      Portland, OR 97205-1707
                                      Tel: (503) 228-7385
                                      Fax: (503) 228-2571
                                      *Lead / Local Counsel*

                                      *and*

                                      **MILSTEIN JACKSON FAIRCHILD
                                      & WADE, LLP**
                                      Gillian L. Wade (*pro hac vice*)
                                      gwade@mjfwlaw.com
                                      Sara D. Avila (*pro hac vice*)
                                      savila@mjfwlaw.com
                                      Marc A. Castaneda (*pro hac vice*)
                                      mcastaneda@mjfwlaw.com
                                      10990 Wilshire Blvd., 8th Floor,
                                      Los Angeles, CA 90024
                                      Tel: (310) 396-9600
                                      Fax: (310) 396-9635

                                      *and*

                                      **CASEY LAW FIRM, LLC**
                                      M. Ryan Casey (OSB # 152824)
                                      ryan@rcaseylaw.com
                                      PO Box 4577
                                      Frisco, CO 80443
                                      Tel: (970) 372-6509
                                      Fax: (970) 372-6482

                                      *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 14, 2021, this document was served on all parties of record via email through the Court's CM/ECF system.

October 14, 2021                    /s/ Joe Piucci
                                    Joe Piucci (OSB # 135325)
                                    joe@piucci.com
                                    Piucci Law, LLC
                                    900 SW 13th, Suite 200
                                    Portland, OR 97205-1707
                                    Tel: (503) 228-7385
                                    Fax: (503) 228-2571
                                    *Lead / Local Counsel for Plaintiff*